**Darrell A. WEBER,**

v.

**NORTH DAKOTA WORKMEN'S COMPENSATION BUREAU.**

**Civ. No. 10902.**

Supreme Court of North Dakota.

Nov. 21, 1985.

Richard B. Thomas [argued], Minot, for appellant.

Clare Hochhalter, Asst. Atty. Gen., [argued], Bismarck, for appellee.

MESCHKE, Justice.

Darrell Weber appeals from an order of the Workmen's Compensation Bureau, which was affirmed by the district court, denying him further medical expense and disability benefits for a shoulder injury incurred in the course of his employment. We reverse and remand for a formal evidentiary hearing, since one has not been held and there are issues of material fact in dispute.

Weber, who was employed as a carpenter at the Minot Air Force Base, injured his right shoulder on September 22, 1982, while descending some steelwork. He sought emergency room treatment on September 28. The physician there suspected an acute sprain and recommended that Weber see an orthopedist. On September 30, 1982, Dr. Stinson, an orthopedic surgeon, diagnosed Weber's injury as a shoulder separation, treated him with medication and physical therapy and estimated a disability period of eight weeks. Weber filed a claim which the Bureau accepted, paying disability, rehabilitation and medical expense benefits.

Stinson continued to treat Weber, who was also examined by a neurologist on

November 8 and December 7, 1982. The neurologist concluded "[m]ost likely traumatic ·tendinitis [sic] involving the right shoulder" and "... probably a subclinical carpal tunnel syndromes [sic] and may not be related to the pain on his shoulders and upper arm." In late January, 1983, Stinson performed a decompressive surgical procedure on Weber, but Weber developed a frozen shoulder that required another surgical procedure at the end of February.

When Weber continued to complain of pain, Stinson requested the Bureau to schedule an appointment with a pain assessment program in Bismarck, where Weber was evaluated April 24–28, 1983. Dr. Dahl diagnosed a "biceps tendon rupture on the right" and "possible minimal rotator cuff tear or supraspinatus tendonitis" from the injury of September 22, 1982. Dahl opined that "the snap that Mr. Weber felt or heard while working on the job was a rupture of his biceps tendon. He also may have had a mild rotator cuff injury at that time. It is difficult for me to tell whether or not he had an AC joint separation at that time." Dr. Dahl went on to observe: "His right arm is going to be somewhat weaker than his left arm in the future, especially for someone who is doing heavy labor. There is a possibility he will not be able to do heavy labor with that right arm in the future...." Weber continued receiving physical therapy and rehabilitation services after his pain clinic evaluation.

On July 28, 1983, Stinson treated Weber again with an injection to Weber's shoulder. Weber was scheduled to continue with deep heat and ultrasound following a two-week vacation, but no target date was set for his return to work.

While on vacation in Wisconsin, Weber suffered multiple fractures, including an additional shoulder injury, in a motorcycle accident on July 31, 1983. In early September, 1983, the Bureau asked Stinson if the disability period from the 1982 injury would be extended and what was his opinion regarding the relationship between Weber's continued disability and the motorcycle accident. Stinson replied that the "disability will be extended a little by further injury to the shoulder.... It remains to me a little unclear now with the overlap of two sets of injuries, as to how much would be from his accident and how much from the Workmen's Compensation Bureau, however, I feel that possibly one final episode of manipulation might be done." Stinson also noted that "[a] second opinion would be most welcome."

A second opinion was obtained on October 18, 1983, when Dr. Dahl examined Weber again. Dahl observed that Weber "has no range of motion of his shoulder actively ...", "still has a ruptured biceps tendon on the right ..." and has a "complete rotator cuff tear." Dahl's recommendations included physical therapy to help Weber regain some range of motion in the right shoulder and surgery to repair the rotator cuff to help Weber gain active abduction and flexion.

Bureau personnel wrote Dahl on December 13, 1983, advising him that they were conducting a thorough review of Weber's claim. They asked Dahl what he thought Weber's recovery time should be for the condition diagnosed in April, 1983, and also what was "the normal length of healing time necessary for this type of condition." The letter further stated that the Bureau would wait for Dahl's response before making a final decision.

Dahl's response did not answer the questions posed. Rather, he restated his April 1983 diagnosis that Weber had "sustained a rupture of his biceps tendon and possibly a mild rotator cuff tear." He stated that "the ruptured biceps tendon will not heal" and that "at this point he does have a complete rupture of his rotator cuff. This will not heal and he will need surgery in order to repair it." The complete tear "may have happened in his accident in July of 1983 or it could have progressed on from an initial small rotator cuff tear that had occurred prior to April, 1983. Since I did not get a chance to examine him in July or just before July of 1983 it is difficult to tell just when the complete rupture occurred."

By letter dated March 29, 1984, the Bureau informed Weber that no benefits would be paid beyond December 6, 1983, "as you had substantial injury when you incurred the motorcycle accident in July of 1983. We have given you at least five months of additional compensation beyond the injury which should have allowed for healing of the initial injury you sustained in September of 1982." Without a formal evidentiary hearing, the Bureau issued its Notice and Order Denying Further Benefits on May 4, 1984. Weber failed to petition for rehearing within 15 days, but finally obtained counsel to file a timely appeal to the district court, which affirmed the Bureau's findings on November 21, 1984.

The Bureau concluded:

"I.

"The claimant failed to prove that his noncompensable motorcycle accident aggravated a compensable injury within the meaning of North Dakota Century Code Section 65–05–15.

"II.

"The claimant filed [sic] to prove that he is entitled to further benefits under the North Dakota Workmen's Compensation Act in connection with his injury of September 22, 1982, beyond those previously awarded and paid."

Section 65–05–15 provides that where a compensable injury is aggravated by a non-employment injury, the Bureau will pay for such proportion of the aggravation as is reasonably attributable to the compensable injury. Where the proportion cannot be determined, "the percentage award shall be fifty percent of total benefits recoverable if one hundred percent of the injury had been the result of employment."

Weber contends that the Bureau's findings are incomplete, distorted and unsupported by a preponderance of the evidence. He further asserts that the Bureau's findings do not support its conclusions and order denying benefits beyond December 6, 1983. We agree to the extent that, from

our consideration of the entire record, there are issues of material fact in dispute which warrant an opportunity for a formal evidentiary hearing. *Manikowske v. North Dakota Workmen's Compensation Bureau,* 373 N.W.2d 884, 887 (N.D.1985); *Aus v. North Dakota Workmen's Compensation Bureau,* 280 N.W.2d 911 (N.D. 1979).

The Bureau's Finding of Fact XVI states: "On October 18, 1983, the claimant was diagnosed as having a ruptured biceps tendon on the right and a rotator cuff tear." The record shows that this diagnosis was made by Dr. Dahl as early as April 1983 and that in October 1983 the ruptured tendon remained and was not repairable and that the rotator cuff tear was then complete instead of minimal.

Similarly incomplete is the Bureau's Finding of Fact XIX:

"On December 15, 1983, Dr. Dahl wrote the Bureau and stated that, 'The ruptured biceps tendon will not heal. The rotator cuff tear may heal and not give him to [sic] much problem in the future or may progress on to a complete rotator cuff tear. This may have happened in his accident in July of 1983 or it could have progressed on from an initial small rotator cuff tear that had occurred prior to April 1983.'"

This finding omits other portions of Dahl's letter, previously referred to, which unequivocally said that Weber had a rupture of his biceps tendon in April, 1983, that he now had a complete rupture of the rotator cuff which would require surgery to repair it, and that Dahl could not tell exactly when the complete rupture had occurred because he had not examined Weber in July.

Also somewhat puzzling is Finding of Fact XV:

"Dr. Keith Stinson informed the Bureau on April 8, 1983, that the claimant had been involved in a motor cycle [sic] accident in early August, and that craniotomies were done. He stated that, 'It remains to me a little unclear now with the overlap of two sets of injuries as to how

much would be from his accident and how much from the Workmen's Compensation Bureau, however, I feel that possibly one final episode of manipulation might be done. I am of the opinion further that his case has been unduly prolonged with continued complaints regarding continued shoulder problems from a very mild degree of acromionclavicular separation several months ago.' "

Stinson could not possibly have informed the Bureau of the accident in April when the accident did not happen until the end of July. The quoted language, taken from Stinson's letter of September 8, 1983, clearly shows that he is unable to allocate the disability and still believes that the injury is only a shoulder separation. Nowhere in the record does he recognize Dr. Dahl's prior diagnosis of the ruptured biceps tendon or torn rotator cuff. Stinson refers to the separation as having taken place "several months ago" when it had actually occurred nearly a year before. Finally, the Bureau omits Stinson's last sentence which says that "[a] second opinion would be most welcome," which indicates unresolved questions on Stinson's part.

Finding of Fact XIV states that "[t]he normal healing period for an injury such as claimant's which was sustained on September 22, 1982, is not in excess of five months." There is nothing in the record to support this finding. Dr. Dahl never responded to the Bureau's questions concerning the normal healing time for Weber's type of injury and an estimate of Weber's recovery time. Dr. Stinson's original estimate that Weber's disability would last about eight weeks proved inaccurate. The record lacks any evidence on "normal" recovery time.

Finally, Finding of Fact XXII states: "There is no substantiation that the claimant's present shoulder problems are in any [sic] attributable to his compensable injury of September 22, 1982, or an aggravation of a compensable injury by a nonemployment injury pursuant to North Dakota

Century Code Section 65–05–15." Our review of the record convinces us that there is indeed evidence to support Weber's claim and little or no evidence to support the Bureau's position that Weber had fully recovered from the September 1982 shoulder injury at the time of the July 1983 motorcycle accident.

The Bureau argues that it is within the Commissioners' discretion to weigh and evaluate the evidence before them, including medical or other expert testimony. We do not disagree with the Bureau's assertion as a general proposition, but discretion is not freedom to pick and choose in an unreasoned manner. The medical reports differed widely, and the Bureau did not adequately address the difference or explain its reasons for overlooking the parts which did not match its findings.

In *Claim of Bromley*, 304 N.W.2d 412 (N.D.1981), the critical issue was the resolution of conflicts between information contained in the initial history and testimony given at a formal hearing, and internal discrepancies in the attending physician's report submitted to the Bureau. We repeated our admonishment from *Steele v. North Dakota Workmen's Compensation Bureau*, 273 N.W.2d 692 (N.D.1978), that although the claimant has the burden of establishing his right to receive benefits, the Bureau should not place itself in a true or fully adversary position to the claimant. We went on to say that the Bureau was obligated to consider the entire medical report or reports and concluded that its decision was not supported by a preponderance of the evidence "[b]ecause of the discrepancies in Dr. Ching's report ... which were not clarified, and the Bureau relying only upon the part of the report favorable to its decision and and [sic] rejecting or disregarding the part of the report and evidence unfavorable to its decision." 304 N.W.2d at 418. Accordingly, we remanded the case to the Bureau for further proceedings to clarify the discrepancies.[1]

---

**1.** On appeal after remand, this Court determined that the Bureau's decision was supported

by preponderance of the evidence and upheld

The evidence in this record does not support the Bureau's collective findings of fact that Weber had, or should have, fully recovered from the September 22 injury before he had the motorcycle accident; consequently, the Bureau's conclusions denying further benefits are not supported by its findings.

Here, the Bureau's order was issued pursuant to an informal hearing, without benefit of an actual evidentiary proceeding and the district court's review was also without benefit of an evidentiary proceeding. *See Aus v. North Dakota Workmen's Compensation Bureau, supra.* This Court recently stated that a claimant's right to an evidentiary hearing is not limited to only those instances where the claimant can make a "further showing" in addition to his original claim, but that a claimant is entitled to an evidentiary hearing "whenever a dispute of material fact exists, including instances where the factual dispute arises from the original claim." *Manikowske v. North Dakota Workmen's Compensation Bureau,* 373 N.W.2d at 887. Factual disputes clearly exist here, concerning both the extent of the original injury and the extent of the aggravation of that injury by the later motorcycle accident. The Bureau should have the benefit of the claimant's testimony, as well as cross-examination of the medical experts, to determine such factual disputes.

Accordingly, we set aside the district court judgment, reverse the Bureau's decision and remand this case to the Bureau for an evidentiary hearing.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.

the denial of benefits. *Claim of Bromley,* 330 N.W.2d 498 (N.D.1983).