431 N.W.2d 651 (1988)
In re the Claim of James William MURRAY for Compensation From the North Dakota Workers Compensation Fund.
James William MURRAY, Appellant,
v.
NORTH DAKOTA WORKERS COMPENSATION BUREAU, Appellee, and
Fargo Iron & Metal Co., Respondent.
Civ. No. 880092.
Supreme Court of North Dakota.
November 10, 1988.
Baker Legal Clinic, Fargo, for appellant; argued by Alan Baker.
Dean J. Haas (argued), Asst. Atty. Gen., North Dakota Workers Compensation Bureau, Bismarck, for appellee.
MESCHKE, Justice.
James W. Murray appealed from a district court judgment affirming an order of the Workers Compensation Bureau denying him additional benefits for chiropractic care for his back. We reverse.
On February 21, 1985, while employed by Fargo Iron & Metal Company, Murray sustained multiple fractures to his feet when they were caught in the hopper of a metal crusher. The hopper raised Murray about ten feet above ground in an inverted position. When his feet pulled free from the hopper, he fell about five feet into the hopper's pit. Murray was immediately taken to the hospital for surgery on his feet. The Bureau paid Murray's medical expenses and disability benefits for those injuries.
Murray's initial claim did not state that he had injured his back. The hospital admission report by his treating physician, Dr. Johnson, indicated that Murray
"did not hit his head or neck and did not lose consciousness. He has noticed no back pain or thigh pain since the fall or accident occurred. The patient states that the fall was cushioned somewhat by wearing a large amount of clothing and a large snowmobile suit.
* * * * * *
"The patient denies any headache, dizziness, or fainting episodes, double vision, loss of vision, difficulty with hearing, runny nose, or discharge from the ears. No neck pain or difficulty swallowing. No chest pain or shortness of breath. No difficulty breathing. No problems with back pain, hip, or knee pain."
Murray was released from the hospital on March 8, 1985, but continued to see Dr. *652 Johnson for his feet. On April 4, 1985, Dr. Johnson reported that Murray's feet were asymptomatic.
Murray convalesced at home until August 21, 1985, when he returned to parttime work at Fargo Iron & Metal on a "work hardening program." This culminated in full-time work on September 9, 1985. Murray's medical rehabilitation coordinator reported that Murray "pushed himself to return to work in his regular position, something which other persons with the same type of injury would probably not have done." Murray testified that he began experiencing back pain after he returned to work. At a January 17, 1986, appointment for an evaluation of his feet, Murray complained to Dr. Johnson about low back pain and requested chiropractic care. Dr. Johnson told Murray that "if he feels he wants to proceed with chiropractic care, that would certainly be fine."
On January 24, 1986, Murray's work supervisor notified the Bureau that Murray was enduring back pain at work and requested a further evaluation. The Bureau told Murray's supervisor that it would pay for another evaluation of Murray's feet, but that it would not pay for an evaluation of Murray's back because "the back was not apparently injured at the time the feet were." The Bureau also told Dr. Johnson that it would not pay for chiropractic care for Murray's back "unless it is medically substantiated that the back problems are a result of that [February 1985] injury."
On February 4, 1986, Murray began treatment with Dr. Bernard Kaseman, a chiropractor. Based on X-rays taken then and on Murray's description and history, Dr. Kaseman diagnosed Murray as suffering from a sprain-strain injury as a result of the February 1985 fall. Dr. Kaseman treated him with "gentle spinal adjustments and physio-therapy in the forms of traction, ultrasound, diathermy, and Galvanic Muscle Stimulation."
After a report by Dr. Kaseman, the Bureau denied Murray benefits for the chiropractic care because:
"There is no indication anywhere in the file of any back problems before January 1986 which is almost a year after the injury occurred. There is no documentation in the file that there was ever a problem with your back and a relationship is not established. The onset of the back problems may have been coincidental with the return to work; however, the Bureau has no choice but to continue denial for such problems."
Thereafter, counsel for Murray wrote the Bureau:
"[B]ased on the Bureau's position concerning liability for the back problems that Mr. Murray is currently having, it would seem reasonable that Dr. Johnson perform an examination on Mr. Murray to determine if the back problems are related to the injuries Mr. Murray suffered on February 21, 1985. These back problems may be the direct result of the fall that Mr. Murray took after his feet were pinned in the machine and he was lifted off the ground or may be the secondary result of Mr. Murray having problems when he is walking as a result of his injuries."
The Bureau refused further benefits beyond those for his feet. Murray sought rehearing and again requested Bureau approval of an examination of his back by Dr. Johnson. The Bureau refused the examination but granted the rehearing.
After a formal hearing, the Bureau affirmed its order allowing Murray medical expenses "directly related" to his injuries to his feet in February 1985, but denying him "further benefits ... over and above those benefits previously awarded and paid." The Bureau determined:
"The medical evidence does not give any indication of the claimant having experienced any low back or related injury in connection with February 21, 1985, incident with the tin baler.
* * * * * *
"On February 21, 1985, upon admission to the hospital, claimant indicated that he had no neck pain or difficulty swallowing, no chest pain or shortness of breath, no difficulty breathing, and specifically no problems with back pain, hip, *653 or knee pain. The claimant also indicated that at the time of his accident, he did not hit his head or neck and did not lose consciousness. He further indicated that he did not notice any back pain or thigh pain since the accident.
"Approximately one year later, after having returned to work, the claimant began to complain of back problems. The Bureau first became aware of such complaints in January 1986.
"At hearing, the chiropractor, Bernard Kaseman, testified that he believed that claimant's back problems were causally related to the injury sustained in February, 1985. However, the doctor first examined claimant on February 4, 1986. Therefore, the doctor opinion is necessarily reliant upon claimant's story long after the fact.
"At hearing claimant testified that he did not notice any back pain while he was recuperating from his feet injuries.
* * * * * *
"Claimant also testified that he first noticed back pain shortly after he began working in September or October.
"At deposition Dr. Jim Johnson stated that he had released claimant following his injury to the feet and that he had no history whatever of claimant reporting any back pain to him until January 17, 1986. The doctor further indicated his belief that claimant's back problems are unrelated to his work related injury to his feet.
* * * * * *
"The claimant has failed to prove that he is entitled to further benefits under the North Dakota Workmen's Compensation Act, over and above those benefits previously awarded and paid, or those provided for by the terms of this order."
Murray appealed to the district court which affirmed the Bureau's decision.
Murray contended that the Bureau unreasonably rejected the uncontroverted opinion of Dr. Kaseman that his back pain was caused by the February 1985 fall. He argued that Dr. Kaseman gave the only expert testimony about causation of his back pain and that the Bureau could not reject that evidence without explaining why it was unbelievable. He submitted that "[s]imple logic shows that either Murray injured his back in the fall or, in pushing himself to return to work, overtaxed and injured back muscles that had been weakened by six months of forced inactivity." Either explanation, Murray argued, justified benefits for chiropractic care to relieve his back discomfort and to allow him to continue working. The Bureau responded that it resolved a conflict of expert testimony by relying upon Dr. Johnson's testimony to conclude that Murray had failed to prove that his back pain was caused by the February 1985 fall.
Pursuant to Section 28-32-19, N.D.C.C., we must affirm an administrative agency decision unless its findings of fact are not supported by a preponderance of the evidence, its conclusions of law are not sustained by the findings of fact, its decision is not supported by its conclusions of law, or its decision is not in accordance with the law. Matter of Stone Creek Channel Improvements, 424 N.W.2d 894 (N.D.1988). In determining whether the Bureau's findings of fact are supported by a preponderance of the evidence, we do not make independent findings of fact or substitute our judgment for that of the Bureau. Hayes v. North Dakota Workers Compensation Bureau, 425 N.W.2d 356 (N.D.1988). Rather, we determine whether the Bureau could have reasonably reached its factual determinations by the greater weight of all the evidence. Moses v. North Dakota Workers Compensation Bureau, 429 N.W.2d 436 (N.D.1988).
To participate in workers compensation, a claimant must establish a compensable injury during the course of employment. N.D.C.C. §§ 65-01-11; 65-05-05; Howes v. North Dakota Workers Compensation Bureau, 429 N.W.2d 730 (N.D.1988). Section 65-01-02(7), N.D.C.C., defines a "compensable injury" as "an injury by accident arising out of and in the course of employment.... Such term, in addition to an injury by accident, includes: a. Any disease which can be fairly traceable to the employment." Section 65-01-02(12), N.D.C.C., *654 says that "fairly traceable to the employment" means only a "disease" that:
"a. Arises under conditions wherein it is apparent to the rational mind upon consideration of all the circumstances that there is a direct causal connection between the conditions under which the work is performed and the disease;
"b. Can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment;
"c. Can be fairly traced to the employment."
An injury is compensable if work-related stress is a substantial contributing factor. Moses v. North Dakota Workers Compensation Bureau, supra; Satrom v. North Dakota Workmen's Compensation Bureau, 328 N.W.2d 824 (N.D.1982).
Although the claimant has the burden to establish entitlement to workers compensation,
"Our decisions have recognized that the adversarial concept has only limited application in determinations related to workers compensation claims. We have recently said that the Bureau is `obligated to consider the entire medical record, and if there is conflicting medical evidence, some favorable and some unfavorable to the claimant, the Bureau must adequately explain its reason for disregarding the favorable evidence in denying benefits.' Hayes, supra at 357; see also Weber v. North Dakota Workmen's Compensation Bureau, 377 N.W.2d 571, 574 (N.D.1985) (Bureau did not `adequately address' medical evidence which did not support its findings)."
Howes v. North Dakota Workers Compensation Bureau, supra, 429 N.W.2d at 733.
In this case Murray presented the testimony of Dr. Kaseman to prove his claim. Dr. Kaseman testified that Murray described "tension-type headaches, some loss of balance, stiffness of the neck, difficult movement of the neck, shoulder pain, pain between the shoulders, numbness in the arms, loss of strength in the hands, as well as painful tail bone, low back pain aggravated by working, lifting, or bending." Dr. Kaseman testified that his "X-ray examination [of Murray] revealed osteoarthritis. The areas of complaint coincided with the injured area and the diagnosis was a chronic condition of the spine whereby the sprain-strain injury continued to progress to the point of causing irritation to the nervous system and subsequent pain." Dr. Kaseman also testified that "the position of his body and the contortions he went through in that fall coincide with the area of the spinal systems that correlate with the injury." Dr. Kaseman testified about Murray's postural misalignment and stated that Murray's osteoarthritis and some of his abnormal curvature were not caused by the accident, but did make Murray more susceptible to injury. Dr. Kaseman further testified that there was a "strong indication of a possible compression fracture at the time of the accident ... [which] would be very much in gravitational alignment with falling into this hopper." Dr. Kaseman also testified that Murray experienced problems "with his feet as far as change in gait or walk" which could stress the back and cause muscle strain.
The Bureau discounted Dr. Kaseman's opinion, concluding that he necessarily relied upon Murray's story long after the fact. In denying Murray further benefits, the Bureau leaned heavily upon Murray's failure to notice back pain immediately after the fall and upon Dr. Johnson's report and deposition. Dr. Johnson's January 17, 1986 report said:
"Patient returns today for evaluation of foot problems.
"The patient states that his feet feel fine. He has no problems.
"He states that since his accident he has had some low back pain and requests chiropractic care.
"I have told the patient that if he feels he wants to proceed with chiropractic care, that would certainly be fine. Since his feet are asymptomatic, we need do nothing more."
At his deposition, Dr. Johnson explained:
"Q.... I note that on January 17, 1986 Mr. Murray mentioned that he had *655 some low back pain and talked to you about seeing a chiropractor, is that correct?
"A. That is correct.
"Q. Prior to that time had Mr. Murray made any mention of back problems to you?
"A. He'd mentioned nothing that I can remember dictating in the chart, but I think that the note on 1-17-86 was dictated as such because he had mentioned I think over the phone prior to that examination that he wanted to receive chiropractic care for some back problems, and so in my note on 1-17-86 was dictated purposefully to state or at least present the fact that I thought the back problem was unrelated to his foot problems and if he wanted chiropractic care, that was up to him.
"Q. So in your opinion the problems he was having with his back weren't caused by the injuries that he suffered to his feet?
"A. Correct.
"Q. Did you do any examination as far as examining him for his back complaints?
"A. I think basically we just checked reflexes usually and neurovascular integrity on people that have back pain. I don't have that documented.
"Q. That would be your standard practice to check for neurological impairment?
"A. Correct.
"Q. And you didn't find any?
"A. No."
The Bureau characterizes Dr. Johnson's testimony as establishing that "placed in the context of the questions asked, it is clear that Dr. Johnson concludes that based upon the history, the work injury to the feet did not cause the back problems." But, Dr. Johnson was not specifically asked whether Murray's fall caused his back injury or whether the back injury manifested itself when Murray returned to work. Dr. Johnson testified that the mechanics of Murray's fall were consistent with someone suffering a back injury, but he did not examine Murray to determine if his back injury was caused by the fall and the Bureau denied Murray's request for such an examination by Dr. Johnson. Dr. Johnson testified that he thought he examined Murray for reflexes and neurovascular integrity on January 17, 1986, but there was no documentation of that examination. Under these circumstances, Dr. Johnson's testimony cannot fairly be construed as eliminating a causal relationship between Murray's fall and his back pain.
In contrast, Dr. Kaseman explicitly opined that Murray's fall caused his back pain. His conclusion directly contradicts the Bureau's finding that the medical evidence gave no "indication" that Murray experienced "any low back or related injury in connection" with the February 1985 fall. The Bureau did not adequately explain Dr. Kaseman's opinion by emphasizing that it was "necessarily reliant upon claimant's story long after the fact." Dr. Kaseman's opinion was also based upon his analysis of Murray's X-rays and upon Murray's description of the mechanics of his fall which was essentially uncontroverted. Similarly, Murray's failure to notice back pain immediately after his fall cannot fairly support a determination that the fall did not cause his later back pain. We do not believe the Bureau's reliance upon this lone item adequately sets aside Dr. Kaseman's opinion.
Based upon this record, we do not believe that Dr. Johnson's testimony was a reasonable basis for the Bureau to conclude that Murray's back pain was not an injury arising out of and in the course of his employment or that his February 1985 fall was not a substantial contributing factor to his back pain. We conclude that the Bureau's findings of fact were not supported by a preponderance of the evidence. Therefore, we reverse the Bureau's order denying liability for Murray's chiropractic care.
LEVINE and GIERKE, JJ., concur.
VANDE WALLE, Justice, dissenting.
I respectfully dissent. Although the majority opinion recites the standards this court uses on appeal from a decision of an administrative agency, I do not understand *656 this court to have drifted away from its decision in Power Fuels, Inc. v. Elkin, 283 N.W.2d 214, 220 (N.D.1979), in which we held that in deciding whether or not an administrative agency's findings of fact are supported by a preponderance of the evidence, we "determine only whether a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record." I do not believe the majority has applied that standard, but rather has made independent findings of fact and substituted its judgment for that of the agency. As an example, on the crucial issue of whether or not Dr. Johnson testified that Murray's injuries were not caused from the accident, the majority limits the import of the question, "So in your opinion the problems he was having with his back weren't caused by the injuries that he suffered to his feet?" and the answer, "Correct," by observing that Dr. Johnson was not specifically asked whether Murray's fall caused his back injury or whether the back injury manifested itself when Murray returned to work. As a result of that observation, the majority concludes that Dr. Johnson's testimony was not a reasonable basis for the Bureau to conclude that Murray's back pain was not due to an injury arising out of and in the course of his employment or that his February 1985 fall was not a substantial contributing factor to his back pain.
I do not believe the testimony of Dr. Johnson can be so limited without judging the credibility of the witnesses, and the weight of their testimony, something we, as an appellate court, do not do. Furthermore, if specific questions should have been asked concerning whether Murray's fall caused his back injury or whether the back injury manifested itself when Murray returned to work, those questions would appear to me to be the obligation of the party bearing the burden of proof. In this instance that party is Murray, for a claimant has the burden of proving he is eligible for benefits. Therefore, the onus, if there must be one, for not having asked those questions, and if they were not included within the question placed to Dr. Johnson, as quoted above, should be laid to Murray, not the Bureau.
Because I believe the Bureau could reasonably have reached the factual conclusions it did, I would affirm.
ERICKSTAD, C.J., concurs.