1999 ND 6

**Paul VRAA, Claimant and Appellant**

v.

**The NORTH DAKOTA WORKERS COMPENSATION BUREAU,**
**Appellee**

and

**North Dakota Mill & Elevator,**
**Respondent**

**Civil No. 980160**

Supreme Court of North Dakota.

Jan. 27, 1999.

Dean J. Haas, of Dietz, Little & Haas, Bismarck, for claimant and appellant.

Harry Malcolm Pippin, Special Assistant Attorney General, Williston, for appellee.

SANDSTROM, Justice.

[¶ 1] Paul Vraa appealed a memorandum decision, order, and judgment affirming a Workers Compensation Bureau order denying benefits. We affirm.

I

[¶ 2] While employed by the State Mill and Elevator as a maintenance mechanic, Vraa suffered a compensable injury to his right knee in 1991 and had arthroscopic surgery in 1992. Vraa returned to his position, which required him to work from a ladder much of the time. On December 1, 1994, Vraa applied for a spouter position at the State Mill. Because the spouter position paid less than the maintenance mechanic position, Vraa was advised he would need a medical reason for the transfer. Vraa saw Dr. Clayburgh, his treating physician, on December 8, 1994. Dr. Clayburgh's notes about that visit state, in part:

> He specifically has questions about his current work status and whether he should be doing a change in his occupation or the job he does at the State Mill. There is the possibility for him to have a less strenuous job involving less lifting and carrying where he would not have to stress his knee much. He would like to apply for this and I support him in this endeavor.

On December 8, 1994, Dr. Clayburgh sent a letter to the State Mill, saying in part:

> This knee and ankle will flare up whenever [ ]he is doing any excessive lifting or walking. I have recommended that he have a job change that does not entail any use of ladders or extensive stair climbing. I would have him limit any heavy weight bearing or carrying heavy weights which would aggravate his knee.

Vraa began working as a spouter in January 1995.

[¶ 3] On December 5, 1995, Vraa filed a notice of reapplication for benefits, in which he stated his "knee always hurts" and "feels bad." The notice of reapplication was accompanied by a note saying Vraa would be showing a wage loss exceeding ten percent. On March 16, 1996, Vraa requested reconsideration of his claim for chiropractic treatments.

[¶ 4] On April 9, 1996, the Bureau concluded Vraa "failed to prove a significant change in his medical condition attributable to the work injury" and "failed to prove that his wage loss is attributable to the work injury." The Bureau's order provided it would contin-

ue paying "reasonable and necessary medical expenses directly related to treatment" of his 1991 injury and provided Vraa "is not entitled to disability benefits in connection with his December 5, 1995, reapplication for benefits." On April 16, 1996, the Bureau issued an order providing it "is not liable for payment of claimant's chiropractic care provided by Dr. Ames from November 8, 1995, through January 31, 1996."

[¶ 5] After a hearing on November 21, 1996, the administrative law judge (ALJ) issued recommended findings of fact, conclusions of law, and order on December 19, 1996. In his recommended conclusions of law, the ALJ concluded, among other things:

> The claimant has the burden to show by a preponderance of the evidence that he is entitled to benefits. NDCC § 65–05–08 requires a showing that "The employee has sustained a significant change in medical condition shown by a preponderance of the evidence." In addition NDCC § 65–05–10(3) requires that rehabilitation benefits for job loss can be paid only if the loss exceeds 10%.
>
> . . . .
>
> His request for job change was made voluntarily and at his own volition. He felt it would be easier on his knee and the evidence seems to support that. It was not, however, a medically mandated change. . . . The change was more like an accommodation by the employer than a medically required change.
>
> The claimant has not shown by the preponderance of the evidence that there was a significant change in medical condition that existed at the time of reapplication. It is, therefore, not necessary to determine whether the 10% loss of wages as required by NDCC § 65–05–10(3) exists.
>
> The question of the Bureau's responsibility for the medical treatment provided by Dr. Ames is controlled by NDCC § 65–05–07, requiring the Bureau to provide reasonable and appropriate medical services, and NDCC § 65–05–28(1), requiring written approval from the Bureau to change doctors. The treatment must also be related to the work injury if the Bureau is to be responsible.

> . . . .
>
> Some of the treatment by Dr. Ames was considered necessary by Dr. Clayburgh and the responsibility for payment of that treatment was assumed by the Bureau.
>
> No written approval to change doctors was given by the Bureau.
>
> The Claimant has not shown by the preponderance of the evidence that the treatment given by Dr. Ames was related to treatment of his work injury.

The ALJ recommended the Bureau's orders of April 9 and 16, 1996, "remain in effect."

[¶ 6] The Bureau adopted the ALJ's recommended findings, conclusions, and order as its final order on January 2, 1997. The Bureau "FURTHER ORDERED that the claimant has failed to demonstrate a loss of earnings capacity greater than 10% as required by N.D.C.C. § 65–05–10(3)." On appeal, the district court affirmed the Bureau's final order, and Vraa appealed to this Court.

[¶ 7] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. §§ 27–05–06, 28–32–15, and 65–10–01. Vraa's appeal to this Court was timely under N.D.R.App.P. 4(a) and N.D.C.C. § 28–32–21. This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. §§ 28–27–01 and 28–32–21.

II

[¶ 8] In an appeal from a district court judgment entered on review of an administrative agency decision, we review the decision of the agency, rather than that of the district court. *Lang v. North Dakota Workers Comp. Bureau,* 1997 ND 133, ¶ 7, 566 N.W.2d 801. Under N.D.C.C. §§ 28–32–19 and 28–32–21, we affirm an administrative agency decision unless the agency's findings of fact are not supported by a preponderance of the evidence, the conclusions of law are not supported by the findings of fact, the decision is not supported by the conclusions of law, the decision is not in accordance with the law or violates the appellant's constitutional rights, or the agency's rules or procedures deprived the appellant of a fair hearing. *Sprunk v. North Dakota Workers Comp. Bureau,* 1998 ND 93, ¶ 4, 576 N.W.2d

861. In evaluating an administrative agency's findings of fact, we do not make independent findings or substitute our judgment for that of the agency, but determine only if a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence from the entire record. *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214, 220 (N.D.1979); *Hibl v. North Dakota Workers Comp. Bureau*, 1998 ND 198, ¶ 7, 586 N.W.2d 167.

## III

 [¶ 9] Vraa seeks benefits under N.D.C.C. § 65–05–10, which, before its amendment in 1997, authorized partial disability benefits if an injury causes temporary partial disability resulting in a decreased earning capacity exceeding ten percent. For a claimant to be entitled to such benefits, " 'there should be a physical disability; second, the disability should be partial, or in other words, the employee should be able to work subject to the disability; and third, there should be an actual loss of earning capacity that is causally related to the disability.' " *Wendt v. North Dakota Workers Comp. Bureau*, 467 N.W.2d 720, 727 (N.D. 1991), quoting *Jimison v. North Dakota Workmen's Comp. Bureau*, 331 N.W.2d 822, 827 n. 5 (N.D.1983). The Bureau relies on N.D.C.C. § 65–05–08(2) (1991), which allowed reinstatement of discontinued partial disability benefits if an employee "sustained a significant change in medical condition" and "provided evidence of actual wage loss attributable to the work injury."

[¶ 10] At the hearing, the ALJ considered Dr. Clayburgh's notes and letter of December 8, 1994, and an April 19, 1995, letter to the State Mill from Monty J. Stensland, an attorney then representing Vraa, which stated, in part: "Mr. Vraa requested his most recent employment demotion due to the constant harassment and abuse that he was exposed to from Mr. Pahlen [Vraa's former supervisor]." The ALJ also considered the testimony of Vraa, Stensland, and Jack Bina.

[¶ 11] Vraa testified the primary reason for changing jobs was his knee and that, in his current job,

It's been way—way more improved ever since—I'm trying—it got a lot better right away. My heel and foot quit hurting so bad. I would still have times when my knee would bother me, but not near the frequency and after I saw the chiropractor my knee has been really good now.

Stensland testified "the knee pain he was experiencing" was one of the reasons Vraa asked for a job change. Bina, a maintenance mechanic at the State Mill, who had previously worked as a spouter, testified on cross-examination:

Q. Now, you testified earlier in response to Mr. Haas' questions that in a spouter position there's less work off of the ladder than in a mechanic II position?

A. Right.

Q. Okay. Now, in terms of the amount of time a spouter spends climbing up and down the ladder, would a spouter climb up and down the ladder more than a mechanic II position would?

A. Yes.

[¶ 12] From our review of the evidence, we conclude a reasoning mind could reasonably find Vraa's "request for job change was made voluntarily," not "medically mandated," and that the job change "was more like an accommodation by the employer than a medically required change." Those findings support the Bureau's order denying Vraa's claim for disability benefits. Because Vraa did not show his injury caused a partial disability resulting in a decreased earning capacity, we need not determine if Vraa's job change resulted in a wage loss exceeding ten percent.

## IV

 [¶ 13] Vraa contends he is entitled to payment of Dr. Ames' chiropractic treatment.

[¶ 14] Dr. Ames testified: (1) He first saw Vraa on November 8, 1995; (2) "And so after three treatments we put a 7–millimeter lift inside his right shoe ... and then we treated him another four, five times and we doubled the lift in his right shoe;" (3) "[I]t's my opinion that Mr. Vraa's knee injury resulted in his hip disfunction and that that's validated by the fact that when we leveled his hip

and manipulated his right posterior hip joint to normal function, that he had significant improvement;" (4) He last saw Vraa on July 17, 1996; (5) His low back treatments were substantially related to Vraa's knee injury; (6) Vraa was not referred to him by a doctor; (7) He did not obtain preapproval from the Bureau before treating Vraa; and (8) He did not treat Vraa for back problems, but to assist him with this right knee pain.

[¶ 15] In a January 4, 1996, letter to the Bureau, Dr. Clayburgh wrote:

This letter is regarding Paul Vraa and the initial care for his right knee injury four years ago. He has recently been treated with a lift that has seemingly settled down his knee discomfort.

I would approve him to have had initial chiropractic assessment and fitting with the lift but I do not think ongoing chiropractic treatment will be necessary.

[¶ 16] Except for Dr. Ames' initial chiropractic assessment and fitting of a lift, Dr. Ames and Dr. Clayburgh differed on the need for the other chiropractic treatment. The Bureau found Dr. Ames' "testimony cannot establish a relationship between treatment administered by him and the original injury when he had not familiarized himself with medical information regarding the original injury." The Bureau further found:

Some of the treatment by Dr. Ames was considered necessary by Dr. Clayburgh and the responsibility for payment of that treatment was assumed by the Bureau.

No written approval to change doctors was given by the Bureau.

The Claimant has not shown by the preponderance of the evidence that the treatment given by Dr. Ames was related to treatment of his work injury.

We conclude a reasoning mind reasonably could have determined those findings were proven by the weight of the evidence.[1]

---

1. The Bureau found: "Some of the treatment by Dr. Ames was considered necessary by Dr. Clayburgh and the responsibility for payment of that treatment was assumed by the Bureau." In its brief in this appeal, the Bureau said: "The Bureau did pay for the initial fitting of the shoe lift for Paul Vraa, but has denied ... any additional chiropractic treatments between November 8,

## V

[¶ 17] As we have already noted, the Bureau found, among other things: "No written approval to change doctors was given by the Bureau." Vraa contends the Bureau waived the issue of Vraa's treatment by Ames without a referral by initially "deciding the claim on medical necessity, not referral, the Bureau waived the issue," and contends the Bureau's procedures denied him a fair hearing, because "[t]he specification of issue did not contain any notice that the Bureau would attempt to create a new issue—as to whether there was a referral to Dr. Ames." Because we have concluded a reasoning mind reasonably could have determined, as the Bureau did, that Vraa did not show Dr. Ames' testimony was related to Vraa's work injury, we need not determine this issue.

## VI

[¶ 18] Vraa contends a July 31, 1996, letter to the Bureau from Dr. Clayburgh should not have been received in evidence at the hearing. Vraa has not shown he was prejudiced by the letter, which was cumulative of Dr. Clayburgh's January 4, 1996, letter, to which Vraa did not object. Therefore, we need not decide if the July 31, 1996, letter was properly received in evidence.

## VII

[¶ 19] The memorandum decision, order, and judgment are affirmed.

[¶ 20] VANDE WALLE, C.J. and NEUMANN and MARING, JJ., concur.

[¶ 21] The Honorable Carol Ronning Kapsner was not a member of the Court when this case was heard and did not participate in this decision.

1995 through January 31, 1996, which the Claimant undertook, on his own, from Chiropractor Ames." At oral argument, Vraa asserted the record does not show any of Dr. Ames' bills were paid. If there is a discrepancy between what the Bureau said it assumed and paid, and what it actually paid Dr. Ames, Vraa may request the Bureau to address the discrepancy.