1999 ND 200

Cindy HEIN, Claimant and Appellant,

v.

NORTH DAKOTA WORKERS
COMPENSATION BUREAU,
Appellee.

and

Super Pumper, Inc., Respondent.

No. 990137.

Supreme Court of North Dakota.

Oct. 20, 1999.

Patrick J. Maddock of Camrud, Maddock, Olson & Larson, Ltd., Grand Forks, N.D., and Jodi L. Nelson (argued), under the Rule on Limited Practice of Law by Law Students, for claimant and appellant.

John C. Simonson, Special Assistant Attorney General, Fargo, N.D., for appellee.

SANDSTROM, Justice.

[¶ 1] Cindy Hein appeals from the district court's judgment affirming a Workers Compensation Bureau order denying benefits for injury to her cervical and trapezius regions, upper back, shoulder, upper arm, upper extremity, and lower extremity. We affirm.

I

[¶ 2] On October 9, 1995, while working at Super Pumper gas station and convenience store, Hein slipped and fell on a wet floor. She was taken to the United Hospital emergency room for pain in the back of her head and coccyx, and was diagnosed

with a coccyx sprain. Hein filed for workers compensation benefits, which she was awarded from October 9, 1995, through October 23, 1995. She returned to work on October 24, 1995, but later left her job to move out of state.

[¶ 3] Hein began to have left shoulder and arm pain in December of 1995. On February 15, 1996, in Missouri, she was treated for pain in her neck, left arm, and left shoulder. Degenerative changes in Hein's cervical spine, borderline degenerative changes in her thoracic and lumbar spine, and minimal scoliosis were discovered at that time. Narrowing of disk space in Hein's cervical spine was noted.

[¶ 4] Hein returned to North Dakota in May of 1996 and was treated by Dr. Patrick Emery, who concluded the etiology of her neck, shoulder, and extremity pain was unknown. Dr. Emery told Hein he was not able to write a letter to the Bureau stating her pain was related to her fall.

[¶ 5] Dr. Emery referred Hein to Dr. Daniel Schmelka, a neurosurgeon. Dr. Schmelka diagnosed her with two to three slipped disks, and he recommended surgery consisting of a two-level diskectomy with fusion. In an October 31, 1996, report to the Bureau, Dr. Schmelka indicated her work injury had "started the sequence of events" leading to her current condition. Dr. Schmelka noted he was "concerned about the time lapse" between the injury and her complaints, but Hein had sought treatment in the interim and "has been unable to work" due to her pain.

[¶ 6] On December 3, 1996, Dr. Ralph Kilzer, a medical consultant for the Bureau, reviewed Hein's records and concluded her degenerative disk disease was not related to the fall. Dr. Kilzer stated Hein's degenerative disk disease would have resulted in the need for surgery, regardless of her work injury.

[¶ 7] On December 5, 1996, Dr. Robert Fielden conducted an independent medical evaluation of Hein. He also noted degenerative disks throughout her spine and concluded her pain was related to the underlying stress problem of her cervical condition. He stated the "symptomatic muscular findings are more likely due to stress and tension and other factors than they are to the injury and they certainly were not triggered by the injury." Dr. Fielden stated he agreed with Dr. Kilzer's opinion. He reported there was no evidence Hein's neck was affected by the fall and her neck pain was "totally unrelated" to her accident.

[¶ 8] On February 17, 1997, Dr. Schmelka recanted his October 31, 1996, opinion in response to an inquiry from the Bureau. He stated it was unlikely Hein's fall caused her current complaints. Dr. Schmelka responded he agreed with Dr. Fielden and two of Hein's treating doctors in their conclusions that surgery was not appropriate.

[¶ 9] In an April 18, 1997, order, the Bureau refused to pay for the diskectomy surgery because it claimed Hein's trapezius, cervical, left upper back, left hand and arm, left shoulder, left upper and lower extremity, and leg conditions were a result of a degenerative disk disease that would have eventually required surgery, regardless of her work injury. Subsequently, Hein consulted Dr. Gary Gasser on July 31, 1997. Dr. Gasser stated he agreed with Dr. Schmelka's October 31, 1996, conclusion that her work injury caused a "sequence of events that led up to the disk bulge and herniations by loosening the ligaments," based on the fact she had not had "cervical pain syndrome prior to this and these are definitely disk bulges and not bony spurs." Dr. Gasser asserted disk bulges are consistent with a fall. However, Dr. Gasser noted Hein had degenerative changes in her cervical spine.

[¶ 10] On October 8, 1997, the claim was heard before a temporary Administrative Law Judge. The record was left open for clarification of Drs. Gasser and Schmelka's opinions. On November 6, 1997, the Bureau requested Dr. Gasser consider the opinions of Drs. Schmelka, Kilzer, and

Fielden. Dr. Gasser responded he did not agree with Dr. Schmelka's second conclusion that the fall was not likely responsible for Hein's condition. Dr. Gasser explained his position by simply referring the Bureau back to his original opinion.

[¶ 11] The ALJ found Hein's cervical, upper back, and left shoulder and arm pain was related to a compensable work injury. The Bureau requested reconsideration, which was denied. The Bureau did not adopt the ALJ's recommended order and issued a final order denying Hein benefits on April 16, 1998. Hein appealed to the district court, which upheld the Bureau's order. She appealed to this Court on May 15, 1999.

[¶ 12] The appeal was timely under N.D.R.App.P. 4(a) and N.D.C.C. § 28–32–21. The district court had jurisdiction under N.D.C.C. § 28–32–19. This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. §§ 28–27–01 and 28–32–21.

## II

[¶ 13] On appeal, we review the Bureau's decision, not the district court's decision. *Hopfauf v. North Dakota Workers Compensation Bureau*, 1998 ND 40, ¶ 8, 575 N.W.2d 436. Under N.D.C.C. §§ 28–32–19 and 28–32–21, this Court affirms an administrative agency decision:

unless the agency's findings of fact are not supported by a preponderance of the evidence, the conclusions of law are not supported by the findings of fact, the decision is not supported by the conclusions of law, the decision is not in accordance with the law or violates the appellant's constitutional rights, or the agency's rules or procedures deprived the appellant of a fair hearing.

*Vraa v. North Dakota Workers Compensation Bureau*, 1999 ND 6, ¶ 8, 588 N.W.2d 857 (citing *Sprunk v. North Dakota Workers Compensation Bureau*, 1998 ND 93, ¶ 4, 576 N.W.2d 861). Our review of the Bureau's findings "is limited to determining if a reasoning mind reasonably could

have determined the findings were proven by the weight of the evidence from the entire record." *Feist v. North Dakota Workers Compensation Bureau*, 1997 ND 177, ¶ 8, 569 N.W.2d 1 (citation omitted).

### A

[¶ 14] Hein argues the Bureau's order improperly clarified the inconsistencies in the medical evidence presented, ignored medical evidence favorable to her, and thus was not supported by a preponderance of the evidence. "The claimant has the burden of establishing his or her right to participate in benefits from the Workers Compensation fund." *Hayes v. North Dakota Workers Compensation Bureau*, 425 N.W.2d 356, 357 (N.D.1988) (citing *Steele v. North Dakota Workmen's Compensation Bureau*, 273 N.W.2d 692, 698 (N.D. 1978)). Yet this Court has said "the Bureau must adequately explain its reason for disregarding the favorable evidence in denying benefits." *Id.* (citing *Weber v. North Dakota Workmen's Compensation Bureau*, 377 N.W.2d 571 (N.D.1985)). This Court has also said "the Bureau may not simply ignore competent medical testimony without expressly setting forth in its findings of fact adequate reasons, which are supported by the record, for doing so." *Satrom v. North Dakota Workmen's Compensation Bureau*, 328 N.W.2d 824, 832 (N.D.1982).

[¶ 15] This Court has also said, the Bureau in its explanation must clarify inconsistencies. *Hibl v. North Dakota Workers Compensation Bureau*, 1998 ND 198, ¶ 10, 586 N.W.2d 167. This Court has further said, the Bureau must clarify inconsistencies in two reports by the same physician and discrepancies between two different physicians. *Weber*, 377 N.W.2d at 574; *Roberts v. North Dakota Workmen's Compensation Bureau*, 326 N.W.2d 702, 706 (N.D.1982). "The explanation for rejection of medical evidence favorable to the claimant may consist of the Bureau's analysis of why it accepted contrary evidence." *Hibl*, at ¶ 10. However, when this Court re-

views the Bureau's resolution of conflicting medical evidence, independent findings or substitutions of judgment must not be made. *Id.* at ¶ 12.

[¶ 16] Hein argues the Bureau failed to clarify inconsistent medical evidence and did not adequately explain its reasons for disregarding medical evidence favorable to her because the Bureau did not make a finding as to whether her fall was a trigger that substantially accelerated or aggravated her underlying cervical, upper back, left upper arm, hand, lower extremity, and shoulder problems or degenerative condition. She also asserts the Bureau's explanation was inadequate because it did not address Dr. Gasser's contention that Hein's disk bulges are more consistent with a fall than with degenerative changes.

[¶ 17] When an employment injury "triggers symptoms in a latent and underlying condition, compensation is generally not allowed if the underlying condition would likely have progressed similarly in the absence of the employment trigger, unless the employment trigger is a substantial aggravating or accelerating factor." *Geck v. North Dakota Workers Compensation Bureau,* 1998 ND 158, ¶ 7, 583 N.W.2d 621 (citing N.D.C.C. § 65–01–02(9)(b)(6) (emphasis omitted)). In its final order, the Bureau noted Hein saw Dr. Gasser in late August of 1997, in anticipation of litigation, and his opinion was the only supporting position she has offered. The Bureau stated Drs. Schmelka, Fielden, and Kilzer were all in agreement that Hein's fall did not cause or trigger her trapezius, left upper back, shoulder, and upper and lower extremity pain. The Bureau found the opinions of Drs. Schmelka, Fielden, and Kilzer "more consistent and credible than the opinion offered by Dr. Gasser." The Bureau stated, "Dr. Schmelka is the most familiar with [Hein's] treatment" and "Drs. Fielden and Kilzer, upon independent review, concur with his conclusions." The Bureau concluded the "greater weight of the evidence" did not indicate Hein's cervical, upper back, left

upper arm, hand, lower extremity and shoulder problems were "fairly traceable to or related to" her work injury.

[¶ 18] The Bureau has satisfied our clarification requirements because it adequately analyzed why it accepted the medical evidence contrary to Hein. After receiving the reports of Dr. Kilzer and Dr. Fielden, the Bureau asked Dr. Schmelka whether he agreed with Dr. Fielden and to provide supporting objective medical evidence if he did not. The Bureau found Dr. Schmelka "reversed himself" in his February 17, 1997, opinion. Hein conceded through counsel, in both her brief and oral argument, that Dr. Schmelka recanted his October 1996 opinion and indicated he instead agreed with Dr. Fielden's opinion. In addition, the Bureau attempted to clarify the conflicting medical evidence after the ALJ's hearing by furnishing Dr. Gasser with the three alternate opinions and asking whether he was still in agreement with Dr. Schmelka's first opinion.

[¶ 19] The Bureau sufficiently clarified the conflicting reports among the four doctors, finding Dr. Schmelka reversed his opinion, and detailing the reasons it rejected Dr. Gasser's opinion. Furthermore, the Bureau clarified the inconsistency between Dr. Schmelka's opinions by finding, as Hein admitted, that Dr. Schmelka recanted his October 1996 opinion.

[¶ 20] The Bureau's findings of fact are supported by a preponderance of the evidence. A reasoning mind reasonably could have found Hein's cervical and trapezius regions, upper back, shoulder, upper arm, upper extremity, and lower extremity injuries are not related to her fall at work. By adequately explaining its reasons for rejecting the ALJ's recommendations, and weighing the credibility of the medical evidence, the Bureau has satisfied its duty under our case law.

B

[¶ 21] Hein also contends the Bureau erred by conducting itself in an ad-

versarial manner in handling her claim. This Court has held "the Bureau must not place itself in a full adversary position to the claimant." *Hayes,* 425 N.W.2d at 357 (citing *Weber,* 377 N.W.2d at 574). Hein claims the Bureau was fully adversarial because it stated in letters to Drs. Fielden and Kilzer that following her fall, she was back at work and doing fine until she was seen on May 20, 1996. Hein claims this statement is incorrect because she twice sought treatment and was still in pain during that time.

[¶ 22] Hein claims the statement may have affected the opinions of Drs. Kilzer and Fielden. At oral argument, her counsel indicated Hein had brought up the Bureau's misstatements at the hearing on October 8, 1997. On the contrary, the transcript reveals no mention of the misstatements. In addition, she made no attempt to seek a rehearing or reconsideration from the Bureau, based on this misinformation, after its final order was issued.

[¶ 23] The record shows Dr. Fielden examined Hein and took a medical history from her. Within that history, Dr. Fielden noted, "[t]he only work she has done since October 1995 was in Kansas City where she got a job and worked about a month and had to stop because she could not tolerate the pain." He also reported that a few weeks after the fall, Hein "began to feel the neck pain going up to the top of the left shoulder and down into the front of the clavicle" and "[i]n December [of 1995], she began to get pain in her neck and left shoulder." Dr. Fielden's report also reviews Hein's medical records, including those obtained between her fall and her treatment on May 20, 1996.

[¶ 24] Moreover, in the letters to both Dr. Kilzer and Dr. Fielden, the Bureau wrote, following the misstatement, that Hein told the doctor at her May 20, 1996, visit that she had developed pain in her left shoulder that had continued since January 1996. The letters asked both doctors to review Hein's medical records.

[¶ 25] Clearly, Drs. Fielden and Kilzer had sufficient information negating the accuracy of the incorrect statement. The district court was correct in concluding the Bureau's misstatements were harmless errors. *Johnson v. North Dakota Workers Compensation Bureau,* 539 N.W.2d 295, 298–99 (N.D.1995). Review of the record does not persuade us the Bureau was impermissibly adversarial. *Bjerke v. North Dakota Workers Compensation Bureau,* 1999 ND 180, ¶¶ 14, 19, 599 N.W.2d 329.

### III

[¶ 26] The judgment of the district court is affirmed.

[¶ 27] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, MARY MUEHLEN MARING, CAROL RONNING KAPSNER, JJ., concur.