William SPANGLER, Appellant,

v.

NORTH DAKOTA WORKERS
COMPENSATION BUREAU,
Appellee.

Civ. No. 940070.

Supreme Court of North Dakota.

July 18, 1994.

Wheeler Wolf, Bismarck, for appellant; argued by Steven L. Latham.

Dean J. Haas (argued), Asst. Atty. Gen., North Dakota Workers Compensation Bureau, Bismarck, for appellee.

MESCHKE, Justice.

William Spangler appeals from a district court judgment affirming an order by the North Dakota Workers Compensation Bureau denying him benefits. We reverse the judgment and remand to the Bureau for further proceedings.

Spangler, working as a cross-country truck driver, hurt his back on September 20, 1990,

while unloading a truck in California. Spangler had finished unloading and was returning to North Dakota when he "couldn't go any farther" and was hospitalized in Wyoming by Dr. Anthony. Spangler had a "very positive straight leg raising test on the left side." Despite a negative radiologist's report, Dr. Anthony noted on September 25 that the myelogram of Spangler's back showed a small herniation. Spangler was discharged the next day after being diagnosed with a lumbar strain and small herniated disc at L5–S1. The Bureau accepted liability for Spangler's work-related injury and paid benefits for the time he was hospitalized. Spangler continued working as a truck driver until quitting on January 1, 1991.

From May until August 1991, Spangler drove for another company but did not have to unload the truck. He could not find work after attending nursing school and began driving again in December 1991. At that time, Spangler began feeling continual pain in his left leg and was hospitalized by Dr. Tolner on January 13, 1992. An MRI of Spangler's back on January 14 showed a small to mid-sized L5–S1 disc herniation on the left side. A myelogram on January 17 was negative, but a CT scan the same day confirmed the herniation. Spangler reapplied to the Bureau for benefits in February. Dr. Moskowitz operated on his herniated disc in August.

The Bureau referred Spangler to Dr. Draper for an examination after receiving his claim for benefits. Dr. Draper initially believed Spangler's herniated disc was caused by the 1990 injury, but changed his mind after receiving the negative 1990 myelogram report. Dr. Moskowitz indicated that a myelogram by itself is a limited diagnostic tool and concluded "since Mr. Spangler was symptomatic from the moment of his [1990] injury in the same exact manner that he has at the point where he had a confirmed herniated disc that there is a significant cause and effect relationship between the two." After a hearing, the Bureau agreed with Dr. Draper's opinion, rejected Dr. Anthony's diagnosis and Dr. Moskowitz's opinion, and denied benefits. The district court affirmed the decision, and Spangler appeals.

■ "The provisions of the Workers' Compensation Act are to be liberally construed in favor of the injured worker.... However, the claimant bears the burden of establishing the right to participate in benefits from the workers' compensation fund. NDCC § 65–01–11." *Halseth v. North Dakota Workers Compensation Bureau*, 514 N.W.2d 371, 372 (N.D.1994) (citations omitted). To receive benefits, the claimant must prove by a preponderance of the evidence that their injury is causally related to their employment. NDCC 65–01–11; *Wherry v. North Dakota State Hospital*, 498 N.W.2d 136, 139 (N.D. 1993). "[I]t is within the province of the ... [Bureau] to weigh conflicting medical opinions and to resolve these conflicts." *Id.* (quotation omitted). However, as we said in *Weber v. North Dakota Workmen's Compensation Bureau*, 377 N.W.2d 571, 574 (N.D. 1985), the authority to selectively rely on conflicting opinions "is not freedom to pick and choose in an unreasoned manner."

■ The Bureau acts as both a fact-finder and an advocate when considering a worker's claim for benefits, so it "must not place itself in a full adversary position to the claimant." *Hayes v. North Dakota Workers Compensation Bureau*, 425 N.W.2d 356, 357 (N.D. 1988). Instead, the Bureau must consider the entire record, clarify inconsistencies, and adequately explain its reason for disregarding medical evidence favorable to the worker. *Id.* As we summarized in *Wherry*, 498 N.W.2d at 139, this requirement applies to conflicting statements in the same medical report, inconsistent reports from the same physician, and conflicting reports from two different physicians.

■ Under NDCC 28–32–19 and 28–32–21, we will affirm the Bureau's decision unless a preponderance of the evidence does not support its findings of fact, its findings do not support its conclusions of law, its conclusions do not support its decision, or its decision is not in accordance with the law. *Halseth*, 514 N.W.2d at 373; *Wherry*, 498 N.W.2d at 139. When deciding if a preponderance of the evidence supports the Bu-

reau's findings, we will not reweigh the evidence or substitute our judgment for that of the Bureau. *Rooks v. North Dakota Workers' Compensation Bureau*, 506 N.W.2d 78, 80 (N.D.1993). We only determine whether the Bureau's findings adequately explain its decision and are reasonably supported by the greater weight of all the evidence. *Id.*

There are several relevant inconsistencies between Dr. Draper's opinion and the medical evidence supporting Spangler's claim. Spangler argues on appeal that the Bureau's findings do not adequately explain Dr. Draper's inconsistent conclusions or the conflicts between his opinion and those of Dr. Moskowitz and Dr. Anthony. Spangler urges that the Bureau could not reasonably decide from the greater weight of this conflicting medical evidence that his herniated disc was not caused by his 1990 injury. The Bureau claims that its findings are reasonably supported by the greater weight of the evidence and reasonably explain its rejection of inconsistent medical evidence. We disagree.

For Spangler to be entitled to benefits, he must link his herniated disc in 1992 to his work-related back injury in 1990. To furnish this link, Spangler presented his 1990 discharge summary to the Bureau, in which he was diagnosed by Dr. Anthony as having a "lumbar strain with small herniated nucleus pulposus [at] L5–S1." This evidence was supplemented with the opinion of Dr. Moskowitz, who "strongly" believed that Spangler's herniated disc at L5–S1 was caused by the injury in 1990. Based on this evidence, Spangler argued to the Bureau that his hospitalization and surgery in 1992 was caused by a disc that was herniated in his 1990 accident.[1]

To rebut this evidence, the Bureau attempted to prove through its examination of Dr. Draper that Dr. Anthony's "discharge summary is not supported by the evidence of the myelogram at the time of that hospitalization," and that his diagnosis was "in error"

and "dictated very rapidly." However, Dr. Anthony's "mistaken" diagnosis is also supported in his progress notes from September 25 saying the "myelogram today shows small herniation," not just a bulging disc at L4–5.[2] Two years later, without looking at the actual myelogram, Dr. Draper rediagnosed Spangler as not having a herniated disc in 1990.

We are not going to reweigh the medical evidence and conclude Dr. Draper's diagnosis is wrong and Dr. Anthony's is right. However, judges are not medical experts, so the Bureau's selective rejection of medical evidence must be adequately explained for appellate review. *See Kopp v. North Dakota Workers Compensation Bureau*, 462 N.W.2d 132, 135 (N.D.1990). Like our rules of procedure, we not do not expect our "adequate explanation" requirement to be treated by the Bureau as "empty noise." *See Matter of Estate of Raketti*, 340 N.W.2d 894, 898 (N.D. 1983). As Justice Frankfurter discussed in *Universal Camera Corp. v. National Labor Relations Board:*

> The Board's findings are entitled to respect; but they must nonetheless be set aside when the record before a Court of Appeals clearly precludes the Board's decision from being justified by a fair estimate of the worth of the testimony of witnesses or its informed judgment on matters within its special competence or both.

340 U.S. 474, 490, 71 S.Ct. 456, 466, 95 L.Ed. 456 (1951) (substantial evidence standard under Administrative Procedure Act). We too have critically examined evidence and concluded that the Bureau's decision was not supported by the greater weight of the evidence. *See Diegel v. North Dakota Workers Compensation Bureau*, 469 N.W.2d 151 (N.D.1991); *DeChandt v. North Dakota Workers Compensation Bureau*, 452 N.W.2d 82 (N.D.1990). Thus, we will hold the Bureau's findings up to "the light that the record in its entirety furnishes," *Universal Camera*, 340 U.S. at 488, 71 S.Ct. at 465, to

1. Spangler complains that the Bureau also disregarded Dr. Tolner's opinion that the 1992 herniation was work-related. However, that opinion is ambiguous because it does not indicate whether the injury was related to Spangler's work in 1992 or 1990. Therefore, the Bureau could properly ignore it.

2. As Dr. Draper testified, there is a substantial medical difference between a herniated disc and a bulging disc.

see if their explanation of inconsistent medical evidence is adequate when applied to the evidence in the record.

Here, the Bureau simply accepted Dr. Draper's conclusion that the myelogram was negative and misquotes Dr. Anthony as diagnosing Spangler "with a *possibility* of a small herniated nucleus pulposus at L5–S1." (emphasis added). The Bureau's findings do not explain at all, much less adequately, why it disregarded Dr. Anthony's opinion that the 1990 myelogram indicated Spangler's disc was herniated.[3] Without an adequate explanation, we cannot conclude that the Bureau's "correction" of Spangler's medical records two years after his injury is supported by the greater weight of the evidence.

Even if the 1990 myelogram was negative and Spangler was misdiagnosed, as Dr. Draper assumes from the radiologist's report, there are other inconsistencies in the medical opinions that were also inadequately explained or overlooked in the Bureau's findings.

Based on the medical records forwarded by the Bureau and on Spangler's "subsequent history and documentation of his L5–S1 disc herniation which is apparently worsened," Dr. Draper originally concluded that Spangler's "L5–S1 disc herniation is the direct result of the accident dated 9–20–90." However, he also said that his opinion might change after looking at the myelogram from 1990 that was not included in the records sent by the Bureau. After receiving this conclusion, the Bureau sent Dr. Draper a copy of the 1990 myelogram report "but not the myelogram itself." This report was "the only other additional record" that he received after his first report. Prompted only by this new evidence, Dr. Draper reevaluated Spangler's complaints of pain, changed his opinion, and concluded that "some intervening occurrence or injury" caused Spangler's subsequent herniation.

■ The Bureau must adequately explain inconsistent reports from the same doctor. *Roberts v. North Dakota Workmen's Com-*

*pensation Bureau,* 326 N.W.2d 702, 706 (N.D.1982); *Schmidt v. North Dakota Workers' Compensation Bureau,* 483 N.W.2d 186, 190–91 (N.D.1992) (VandeWalle, Justice, concurring specially). The Bureau's findings adopt Dr. Draper's explanation that the medical records he examined did not initially include the negative myelogram and that a myelogram is 90% accurate in detecting herniated discs. This explanation would certainly be adequate if there was no contrary medical evidence. However, Dr. Moskowitz explained "that a myelogram is an exceptionally limited diagnostic tool" by itself and "[t]herefore, if a myelogram was performed [in 1990], this may very well be negative" even if the disc was herniated. In addition, Dr. Draper testified that the 10% possibility of a false negative myelogram is not random and "statistical[ly] ... unlikely to have occurred" twice with the same patient, as the Bureau suggests in their brief, but that "there are some lateral disks [sic] that can be seen [with a CT scan] that are not seen only on the myelogram." Thus, if Spangler's disc herniation was the type that could not be detected on a myelogram in 1992, a negative myelogram in 1990 would be consistent with Spangler's claim that his disc was herniated in 1990.

■ The Bureau's only response to the disputed accuracy of Spangler's myelograms was to imply that Dr. Moskowitz's opinion was biased because he would not be paid for Spangler's surgery unless the Bureau granted his claim for medical benefits. Impeaching an expert opinion by "establishing bias through financial interest is proper." *McCormick On Evidence* § 13 at 57 (4th ed. 1992). However, the suggestion that a physician's opinion could be purchased is an affront to the medical profession and cannot by itself be an adequate reason to disregard his opinion in this context. Almost all experts are reimbursed for their time, and the Bureau could disregard all contrary opinions if

---

**3.** During the Bureau's questioning of Dr. Draper, it stated that "Dr. Anthony reported the myelogram ... was negative." This remark has no support in Dr. Anthony's progress notes or discharge summary, and demonstrates the Bureau's disregard of his opinion that the myelogram showed a "small herniation."

this rationale were sufficient.[4] Having compared the Bureau's findings to the inconsistent medical evidence, Dr. Draper's change of heart based on a 1990 myelogram report with disputed accuracy is not adequately explained.

Even if the negative myelogram conclusively proved that Spangler's disc was not herniated in 1990, that fact does not preclude Spangler from receiving benefits if the 1992 herniation was "a natural progression of the compensable injury" in 1990. *Roggenbuck v. North Dakota Workers Compensation Bureau*, 481 N.W.2d 599, 606 (N.D.1992), *citing* NDCC 65–05–15(3). Dr. Moskowitz "strongly" felt that "the accident that [Spangler] had so severely disrupted the annulus fibrosis" that even if his disc was not herniated in 1990, "it is still quite possible that [the accident] led to significant disruption of his disc and subsequent herniation." The Bureau did not rebut this causal link between Spangler's herniated disc and his 1990 injury with any medical evidence, nor did it ask Dr. Draper whether Spangler's 1992 herniation could not be a natural progression of the prior back injury.

Instead, the Bureau disagreed with Dr. Moskowitz's opinion because it was "inconsistent with the facts" and did not adequately explain the 13–month lapse in medical treatment, Spangler's ability to continue working, or the lack of significant left leg pain until December 1991.[5] Dr. Moskowitz's short written opinion does not describe the history he relied on in forming his opinion, but only summarized that Spangler was "symptomatic from the moment of his injury." We have written that the Bureau's explanations are adequate if the rejected medical evidence "does not adequately account" for a claimant's history. *Wherry*, 498 N.W.2d at 141; *Kuklok v. North Dakota Workers' Compensation Bureau*, 492 N.W.2d 572, 575 (N.D. 1992). However, these decisions are not an invitation for the Bureau to assume that a treating physician's opinion is not based on the patient's history simply because their written opinion does not say so.

Unlike the physician in *Matuska v. North Dakota Workers Compensation Bureau*, Dr. Moskowitz was not asked by the Bureau, and did not confirm in a subsequent letter, whether he considered certain aspects of Spangler's medical history. 482 N.W.2d 856, 860 (N.D.1992). The Bureau did not object to the use of Dr. Moskowitz's written opinion instead of oral testimony. The reasons provided in the Bureau's findings to discredit the opinion are excellent questions for cross-examination, but the Bureau did not do so. There is no evidence in the record that Dr. Moskowitz was unaware of Spangler's treatment history, work history, or onset of continual pain in December 1991. It is startling that the Bureau would assume Dr. Moskowitz performed the delicate surgery in this case while being ignorant of Spangler's medical history. Spangler satisfied his burden of proof by introducing the opinion of a treating physician based on his history, and it was the Bureau's responsibility to discredit that opinion.

"An adequate explanation for the Bureau's rejection of evidence favorable to the claimant may be provided in the Bureau's analysis of why it accepted contrary evidence." *Wherry*, 498 N.W.2d at 141. In this case, the reasons given for relying on Dr. Draper's opinion do not adequately explain why the Bureau rejected Dr. Anthony's opinion that the 1990 myelogram showed a small herniation, Dr. Moskowitz's opinion that both myelograms were inaccurate, or Dr. Moskowitz's opinion that the 1992 herniation was a natural result of the 1990 injury.

The Bureau correctly observes that its decision was not based only upon a negative 1990 myelogram. However, its decision also

---

4. The Bureau describes Dr. Draper as performing an "independent medical examination" of Spangler, yet we assume that he too was reimbursed for his examination and testimony.

5. Were we to reweigh the evidence instead of examining the adequacy of the Bureau's explanations, we would note Dr. Draper testified that leg pain "can decrease and it can get worse" and

"can sometimes get better with conservative treatment," something Spangler testified that he tried. In addition, Dr. Draper "did talk to [Spangler] about his symptoms" and "the type of work" he was doing since the 1990 injury, but despite this history Dr. Draper still originally concluded that Spangler's herniated disc was caused in 1990.

cannot be based solely on the credibility of Spangler's complaints and symptoms. The symptoms allegedly resulting from the herniated disc in 1990 are supported by significant medical evidence, including a herniation in the same location less than 18 months later.

As Chief Justice VandeWalle observed in *Roggenbuck,* we are continually asked to review denied claims that are based on subjective complaints of pain. 481 N.W.2d at 608 (VandeWalle, Justice, concurring specially). The Bureau cannot dismiss these complaints as incredible simply because the claimant "attempt[ed] to keep working, rather than filing a claim," and "tried to keep his place on the employer's pay roll." *Evjen v. North Dakota Workers Compensation Bureau,* 429 N.W.2d 418, 421 (N.D.1988). In this case, Dr. Draper completely changed his perception of Spangler's symptoms based only on the 1990 myelogram report. Thus, it was critical for the Bureau to resolve these medical inconsistencies before assessing Spangler's credibility.

The Bureau is free to prove on remand, if it can, that the reoccurrence of Spangler's back pain is coincidentally located and not causally related to his 1990 injury. The Bureau can cross-examine Dr. Anthony about his diagnosis. The Bureau can also ask Dr. Moskowitz whether the negative 1990 myelogram is supported by the lack of any credible complaints from Spangler until 13 months after the original injury. The Bureau may also be able to prove that the 1990 injury was not the only contributing factor to the herniation. *See* NDCC 65–05–15(3). However, without an adequate explanation for disregarding the significant medical evidence supporting Spangler's claim, the Bureau's decision is not supported by a preponderance of the evidence.

We reverse the judgment affirming the Bureau's denial of benefits and remand for further proceedings to determine if Spangler is eligible for benefits.

VANDE WALLE, C.J., and LEVINE, NEUMANN and SANDSTROM, JJ., concur.