**Lana L. NAUMANN, Claimant and Appellee,**

v.

**NORTH DAKOTA WORKERS COMPENSATION BUREAU, Appellant,**

and

**Minot Vocational Adjustment Workshop, Respondent.**

**Civil No. 950275.**

Supreme Court of North Dakota.

March 19, 1996.

Mark G. Schneider, of Schneider, Schneider & Schneider, Fargo, for claimant and appellee.

Thomas A. Jacobson, Special Assistant Attorney General, of Nilles, Hansen & Davies, Ltd., Fargo, for appellant.

VANDE WALLE, Chief Justice.

The North Dakota Workers Compensation Bureau appealed a district court judgment reversing the Bureau's order dismissing Lana L. Naumann's claim for benefits. We reverse and remand.

On July 28, 1993, Naumann filed a claim for a July 24, 1993, work-related injury to her left arm, elbow, and shoulder. Her treating physician, Dr. Henry Meijer, diagnosed bursitis. Naumann had previously been treated for non-work-related arm and

shoulder pain.[1] On October 6, 1993, a Bureau claims analyst sent to Dr. Meijer a letter containing six questions. The questions, and Dr. Meijer's answers, were:

"1. Was Ms. Naumann's left shoulder bursitis symptomatic prior to the work injury on July 24, 1993?

"Yes.

"2. Did Ms. Naumann have work restrictions or interference with function prior to the work injury? If so, please explain.

"No.

"3. Would the underlying condition have more likely than not progressed similarly in the absence of the July 24, 1993 work injury?

"Yes.

"4. Did the work injury substantially contribute to, aggravate, or accelerate the left shoulder problem? or,

"No.

"5. Did it merely act as a trigger to make an underlying condition symptomatic?

"Yes.

"6. Is Ms. Naumann's problem of calcific bursitis a direct result of her injury on July 24, 1993?

"No."

In a letter of May 23, 1994, Dr. David Uthus, an orthopedic surgeon, stated "it is my feeling that Mrs. Naumann's pain in her left shoulder is due to injuries she has sustained in the past while working" and "[i]t is certainly my feeling that her shoulder problem is indeed related to her work injuries."

After a hearing on June 1, 1994, the Bureau issued its findings of fact, conclusions of law, and order dismissing Naumann's claim on September 29, 1994. The Bureau found:

"III.

"The medical evidence indicates that Naumann's left shoulder bursitis was symptomatic prior to the July 24, 1993 work injury, that Naumann's underlying condition would have likely progressed similarly in the absence of the work injury, and that the work injury merely acted as a trigger to make an underlying condition symptomatic.

"IV.

"The medical evidence also indicates that Naumann's calcific bursitis is not a direct result of her July 24, 1993 work injury.

"V.

"... On May 23, 1994, Dr. David Uthus submitted a letter addressed to 'Whom it may Concern' in which he stated that the 'pain in her left shoulder is due to injuries she has sustained in the past while working.' Dr. Uthus noted in November of 1993 that she had calcific tendonitis and that she had full range of motion, that her shoulder felt fine, and that she was asymptomatic. Dr. Uthus does not explain how her symptoms are the result of her employment. Dr. Uthus does not address any of her pre-existing conditions. Dr. Uthus does not explain how the alleged work injury caused any pre-existing condition to substantially worsen. Dr. Uthus does not address how Lana Naumann's calcific bursitis had been caused or affected by her employment. Dr. Henry Meijer had been Lana Naumann's treating physician at the time of the alleged work injury. The opinion of Dr. Meijer is more credible

---

1. Section 65–01–02(9)(b)(6), N.D.C.C., excludes from "compensable injury:"

   "(6) Injuries attributable to a preexisting injury, disease, or condition which clearly manifested itself prior to the compensable injury. This does not prevent compensation where employment substantially aggravates and acts upon an underlying condition, substantially worsening its severity, or where employment substantially accelerates the progression of an underlying condition. It is insufficient, however, to afford compensation under this title solely because the employment acted as a trigger to produce symptoms in a latent and underlying condition if the underlying condition would likely have progressed similarly in the absence of the employment trigger, unless the employment trigger is determined to be a substantial aggravating or accelerating factor. An underlying condition is a preexisting injury, disease, or infirmity."

and entitled to more weight than the opinion of Dr. Uthus."

The Bureau also found that the evidence does not indicate that Naumann's left shoulder condition is related to her employment or that she sustained a compensable injury in the course of her employment on July 24, 1993.

■ On appeal, the district court reversed and ordered the Bureau to award benefits to Naumann. The district court found that "Naumann's injuries to her left arm, elbow and shoulder ... were substantially caused by her work activities" and that "[t]he most reliable medical evidence is from Dr. Uthus." It is apparent that the district court made independent findings of fact and substituted its judgment for that of the Bureau, which a reviewing court may not do. *See, e.g., Matter of Prettyman,* 410 N.W.2d 533 (N.D.1987). Furthermore, "it is within the Bureau's province to weigh the credibility of the evidence presented." *Latraille v. North Dakota Workers Compensation Bureau,* 481 N.W.2d 446, 450 (N.D.1992). The trial court therefore employed an improper standard of review to reverse the Bureau's order.

■ However, on appeal from a district court judgment reviewing an administrative agency decision, we review the agency decision, rather than that of the district court, and we limit our review to the record before the agency, without deferring to the court's findings. *Allen v. Wessman,* 542 N.W.2d 748 (N.D.1996). Under § 28–32–19, N.D.C.C., which governs the scope of judicial review of administrative agency decisions in both the district court and this court, a reviewing court may not make independent findings of fact or substitute its judgment for that of the agency. *Matter of Prettyman, supra.* A reviewing court must "affirm an agency's fact-based decision if its findings of fact are supported by a preponderance of the evidence, its conclusions of law are supported by its findings of fact, its decision is supported by its conclusions of law, and its decision is in accordance with the law." *Koch Oil Co. v. Hanson,* 536 N.W.2d 702, 706 (N.D.1995). In determining if an agency's findings of fact are supported by a preponderance of the evidence, we determine if a reasoning mind reasonably could have determined that the agency's factual conclusions were supported by the evidence. *Id.* In a case in which there are inconsistent or conflicting medical statements, opinions or reports, "the Bureau must consider the entire record, clarify inconsistencies, and adequately explain its reason for disregarding medical evidence favorable to the worker." *Spangler v. North Dakota Workers Compensation Bureau,* 519 N.W.2d 576, 577 (N.D.1994).

■ The Bureau had before it conflicting medical evidence. It relied upon Dr. Meijer's medical evidence unfavorable to Naumann and rejected Dr. Uthus' medical evidence favorable to Naumann. The Bureau's explanation for disregarding Dr. Uthus' evidence favorable to Naumann was that Dr. Uthus failed to "explain" or "address" certain matters. However, Dr. Meijer's one-word answers to the Bureau's six questions just as surely failed to explain or address the relevant matters. Dr. Meijer's answers to the first and fifth questions were inconsistent. Dr. Meijer's unilluminating one-word answers to the six questions propounded to him by a Bureau claims analyst do not provide a basis for attaching greater credibility to Dr. Meijer's opinion than to that of Dr. Uthus, to whom Dr. Meijer had referred Naumann. The Bureau has not adequately resolved the conflict in the medical evidence or explained its reason for disregarding Dr. Uthus' evidence.

We also conclude that, in light of the conflicting medical evidence, Dr. Meijer's answers to the claims analyst's questions do not constitute evidence from which a reasoning mind could reasonably conclude that Naumann's shoulder bursitis did not result from her July 24, 1993, work injury, or would likely have progressed similarly in the absence of the work injury, or that the work injury merely acted as a trigger to make Naumann's underlying condition symptomatic. Counsel for the Bureau suggested at oral argument that there was other evidence in the record to support the Bureau's findings. We decline the invitation to comb the record for evidence to support the Bureau's findings. *See, e.g., First Am. Bank & Trust v.*

*Elsberry,* 448 N.W.2d 184 (N.D.1989) and *First Nat'l Bank v. Clark,* 332 N.W.2d 264 (N.D.1983) (a court has no duty to look for evidence not brought to its attention by a party in summary judgment proceedings).

The judgment is reversed and the matter is remanded to the district court with instructions to remand it to the Bureau for redetermination, including further evidence, if necessary, in accordance with this opinion.

SANDSTROM, NEUMANN and MESCHKE, JJ., and LEVINE, Surrogate Judge, concur.