Phyllis SYMINGTON, Claimant and Appellant,

v.

NORTH DAKOTA WORKERS COMPENSATION BUREAU, Appellee,

and

Pembina County Memorial Hospital, Respondent.

Civil No. 950312.

Supreme Court of North Dakota.

April 8, 1996.

Daniel E. Phillips, of Schneider, Schneider & Schneider, Fargo, for claimant and appellant.

Douglas W. Gigler, Special Assistant Attorney General, Fargo, for appellee.

SANDSTROM, Justice.

Phyllis Symington appealed from a district court judgment affirming a Workers Compensation Bureau order denying benefits for a shoulder injury. We conclude a reasoning mind reasonably could have found, as the Bureau did, that Symington's shoulder problem was not related to a work injury, and we affirm.

## I

On October 22, 1991, Symington, a dietary aide at Pembina County Memorial Hospital, filed a claim for benefits with the Bureau. Symington said she injured her right knee in a fall in a walk-in freezer on September 8, 1991. The Bureau accepted liability for the knee injury and awarded benefits. Dr. Robert Askew performed surgery on Symington's knee on December 20, 1991.

On May 13, 1992, Symington participated in a work-tolerance assessment. The assessing therapist's report stated Symington "had some significant problems noted with her right shoulder for which there is no diagnosis available." The Bureau had Symington examined by Dr. Paul Larsen on November 11, 1992, to determine if she could return to light duty. Dr. Larsen stated in his report:

"The patient states that for the past two months she has had pain in her right shoulder. This pain is very focal in the lateral aspect of the shoulder, but she states that this pain was present many, many years ago and has recurred since.

There appears to be absolutely no relationship between this pain and her accident of 1991."

Dr. Larsen's report also said Symington's shoulder tenderness was "consistent with right bicipital bursitis."

When Symington saw Dr. Askew about her knee on December 8, 1992, she asked Askew "to look at her neck and shoulder which she relates injuring at the same time as the fall which injured her knee." Askew prescribed physical therapy for the shoulder. In May 1993, Symington requested the Bureau to accept liability for shoulder therapy. On January 11, 1994, Askew performed shoulder surgery to repair a torn rotator cuff. In a letter of May 12, 1994, Dr. Askew stated: "In my opinion, her diagnosis of rotator cuff tear is associated with the trauma received in the fall and the subsequent need for surgery was directly related to the injury that she suffered."

The Bureau rejected Dr. Askew's opinion and credited Dr. Larsen's opinion that Symington's shoulder pain was unrelated to the 1991 fall. The Bureau denied benefits for Symington's shoulder because she "failed to prove that it is work related." Symington appealed to the district court, which affirmed the Bureau's order. Symington appealed to this Court, contending the Bureau erred in denying liability for the injury to her shoulder.

The district court had jurisdiction under Art. VI, § 8, N.D. Const., N.D.C.C. §§ 27-05-06, 28-32-15, and 65-10-01. This Court has jurisdiction under Art. VI, §§ 2 and 6, N.D. Const., and N.D.C.C. § 28-32-21. The appeal was timely under Rule 4(a), N.D.R.App.P., and N.D.C.C. § 28-32-21.

## II

■ Our review of the Bureau's decision is governed by N.D.C.C. § 28-32-19. We review the decision of the agency, not the decision of the district court. N.D.C.C. § 28-32-21; *Lambott v. Job Service North Dakota*, 498 N.W.2d 157, 158 (N.D.1993). We affirm the Bureau's decision unless its findings of fact are not supported by a preponderance of the evidence, its conclusions of law are not supported by its findings of fact,

its decision is not supported by its conclusions of law, or its decision is not in accordance with the law. *Otto v. North Dakota Workers Compensation Bureau*, 533 N.W.2d 703, 706 (N.D.1995). In considering whether the Bureau's findings of fact are supported by a preponderance of the evidence, we exercise restraint and do not make independent findings of fact or substitute our judgment for the Bureau's determination. *Wherry v. North Dakota State Hospital*, 498 N.W.2d 136, 139 (N.D.1993). Our review of the Bureau's findings of fact is limited to whether a reasoning mind could have reasonably decided the factual findings were proven by the weight of the evidence from the entire record. *Wherry* at 139; *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214, 220 (N.D.1979).

To participate in the workers compensation fund, a claimant must prove a compensable injury by a preponderance of the evidence. N.D.C.C. § 65-01-11; *Wherry* at 139. In reconciling the claimant's burden of proof with our standard of review of a decision based upon conflicting medical evidence, we require the Bureau to clarify inconsistencies and adequately explain its rationale for disregarding medical evidence favorable to the claimant. *Wherry* at 139.

## III

■ Symington contends the Bureau unreasonably chose Dr. Larsen's opinion that Symington's shoulder pain was not caused by her 1991 fall, rather than Dr. Askew's opinion that Symington's rotator cuff tear was caused by the 1991 fall. The Bureau found:

"Dr. Askew has, apparently, based his opinion that claimant's shoulder condition is related to her injury based upon the history that claimant gave to him.... However, the claimant's statements are not consistent and somewhat contradictory.... Claimant's failure to tell doctors at the Memorial County Hospital, Dr. Larsen, Dr. Adams, initially Dr. Askew, and the HCX nurse, indicates that claimant was not having significant right shoulder problems as she claims.... She did not report anything about shoulder pain or jamming her shoulder in the fall in the

claim form. I conclude that Dr. Askew's opinion that claimant's shoulder condition is related to her fall is based upon claimant's history, which is not supported by any other evidence. I therefore reject that opinion and credit Dr. Larsen's opinion that claimant's right shoulder problem is not related to her work injury of September 8, 1991."

The district court analyzed Dr. Askew's opinion:

"While Dr. Askew's opinion is not medically inconsistent with the possibility that Symington's history may be correct, considering the lack of documentation of her problem in earlier records, and further considering that his opinion of causation is dependent upon Symington's history, the opinion does not support the probability that the condition was caused by the accident."

In her initial claim for benefits, Symington did not assert any injury to her shoulder in her fall on September 8, 1991. Between September 8, 1991, and November 17, 1992, Symington was examined by at least five doctors—Dr. K. Crawford, Dr. E.J. Larson, Dr. Edward L. Adams, Dr. Robert Askew, and Dr. Paul Larsen—on fourteen separate occasions (September 8, 13, 20 and 27, 1991; October 4 and 10, 1991; November 25, 1991; December 12, 17 and 20, 1991; February 25, 1992; April 7, 1992; June 19, 1992; and November 17, 1992). None of the doctors' medical records of any of those examinations indicate Symington had said she injured her right shoulder in her fall on September 8, 1991. Dr. Larsen's report of his November 17, 1992, examination of Symington states Symington told him her right shoulder pain "was present many, many years ago and has recurred since." Dr. Askew's notation about his December 8, 1992, examination of Symington—"She also asked me to look at her neck and shoulder which she relates injuring at the same time as the fall which injured her knee"—is the first medical documentation that Symington had ever said she had injured her shoulder in her fall on September 8, 1991. In light of the foregoing evidence, especially the lack of any medical documentation of shoulder pain asserted to be due to the September 8, 1991, fall, before December 8, 1992, and Symington's contradictory shoulder pain histories as recorded by Dr. Larsen and Dr. Askew, we conclude that the Bureau "adequately explain[ed] its reason for disregarding medical evidence favorable to [Symington]." *Spangler* at 577. Furthermore, from the foregoing evidence, a reasoning mind reasonably could have found, as the Bureau did in crediting Dr. Larsen's opinion, that Symington's right shoulder problem was not related to her work injury of September 8, 1991.

There is no dispute that Symington had a torn rotator cuff of the right shoulder. Symington argues that because Dr. Larsen's diagnosis of bicipital bursitis was incorrect, his opinion of a lack of any relationship of the shoulder injury to Symington's employment must be discounted. Dr. Larsen examined Symington to determine if she was capable, with her knee injury, of working in a light duty job offered by her employer. Dr. Larsen noted in his report: "Focal tenderness of right lateral shoulder consistent with right bicipital bursitis." In our view, the fact that Dr. Askew later discovered Symington had a torn rotator cuff has no bearing upon Dr. Larsen's statement in his report, that "[t]here appears to be absolutely no relationship between [Symington's right shoulder] pain and her accident of 1991," which was clearly based upon the history Symington gave to Dr. Larsen.

IV

Symington contends the opinion of Dr. Askew, a specialist in orthopaedic surgery, is entitled to greater weight than the opinion of Dr. Larsen, a specialist in internal medicine. Symington also contends the opinion of Dr. Askew, as Symington's treating physician, is entitled to greater weight than the opinion of Dr. Larsen, an independent medical examiner. She urges us to adopt a rule of law that a treating physician's opinion shall be entitled to "great weight." It is up to the Bureau to weigh the credibility of medical evidence. *Latraille v. North Dakota Workers Compensation Bureau,* 481 N.W.2d 446, 450 (N.D.1992). We can appreciate that the relative weight of evidence offered by

physicians practicing different specialties might reasonably vary from case to case, as will that of evidence offered by treating and examining physicians. Absent legislation, we decline to adopt any rules ranking the weight of evidence offered by physicians practicing different specialities or the weight of evidence offered by treating and examining physicians. In our view, it is enough that in cases where there are inconsistent or conflicting medical statements, opinions or reports, the Bureau must "clarify inconsistencies, and adequately explain its reason for disregarding medical evidence favorable to the worker." *Spangler v. North Dakota Workers Compensation Bureau*, 519 N.W.2d 576, 577 (N.D.1994).

## V

Symington contends the Bureau incorrectly found she had given conflicting stories about her fall. There is evidence in the record, however, from which a reasoning mind could reasonably have found as the Bureau did.

Symington asserts the lack of any mention of shoulder problems in medical reports is explained in the record. She contends it was due to procrastination, the pain-masking effect of pain medication taken for her knee, or the failure of the doctors to record her complaints. Those are possibilities for the factfinder to consider. However, the lack of any medical documentation of work-related shoulder problems is evidence of the nonexistence of work-related shoulder problems, from which a reasoning mind could reasonably find that Symington did not have any work-related shoulder problems.

## VI

■ Symington argues if there was conflicting medical evidence, the Bureau erred in not appointing another doctor under N.D.C.C. § 65-05-28(3)(a), which provides:

"3. The bureau may at any time require an employee to submit to an independent medical examination by a duly qualified doctor or doctors designated or approved by the bureau. The independent medical examination must be for the purpose of review of the diagnosis, prognosis, treatment, or fees. The employee may have a duly qualified doctor designated by that employee present at the examination if procured and paid for by that employee. Providing further that:

"a. In case of any disagreement between doctors making an examination on the part of the bureau and the employee's doctor, the bureau shall appoint an impartial doctor duly qualified who shall make an examination and shall report to the bureau."

■ Symington is in a poor position to complain the Bureau failed to appoint another doctor to examine her. She did not request the Bureau to appoint another doctor and she did not raise this issue in the agency proceeding. A court reviewing an administrative agency decision generally will review only issues raised in the agency proceeding. *County of Stutsman v. State Historical Society*, 371 N.W.2d 321, 329 (N.D.1985); *In re Village Bd. of Wheatland*, 77 N.D. 194, 42 N.W.2d 321, 335 (1950). Because this issue was not raised in the administrative agency proceeding below, we will not consider it in this appeal.

## VII

The judgment of the district court is affirmed.

VANDE WALLE, C.J., MESCHKE and NEUMANN, JJ., and BERYL J. LEVINE, Surrogate Judge, concur.

The Honorable MARY MUEHLEN MARING was not a member of the Court when this case was heard and did not participate in this decision.