1997 ND 133

**Patricia LANG, Claimant and Appellant,**

v.

**NORTH DAKOTA WORKERS COMPENSATION BUREAU,**
**Appellee,**

and

**Gordon's Holiday Spot Inc., Respondent.**

**Civil No. 960303.**

Supreme Court of North Dakota.

July 17, 1997.

Steven L. Latham (argued), of Wheeler Wolf, Bismarck, for Claimant and Appellant.

Lawrence A. Dopson (argued), Special Assistant Attorney General, of Zuger Kirmis & Smith, Bismarck, for Appellee.

MARING, Justice.

[¶ 1] Patricia Lang appeals from the July 19, 1996, Judgment affirming the Bureau's order denying her re-application for benefits based on a significant change in her medical condition. We reverse and remand to the Bureau for further findings consistent with this opinion.

[¶ 2] Patricia Lang was employed as a waitress in Minot, North Dakota. In 1989 and 1992, she filed Workers Compensation claims based on de Quervain's syndrome, an inflammation of the membrane surrounding the tendons in her hands and wrists. The 1989 claim was for her right hand and arm, and the 1992 claim was for her left hand and arm. The de Quervain's syndrome developed as a result of her continued carrying of heavy plates and related waitress duties. The Bureau accepted both claims and paid medical and disability benefits. Lang underwent extensive medical treatment for her condition, and was eventually found capable of returning to work in a sedentary capacity. Lang's disability benefits were terminated in December 1993 because the Bureau concluded she had transferrable skills to obtain appropriate gainful employment.

[¶ 3] In March 1995, Lang applied for reinstatement of disability benefits claiming she suffered from increased pain in her hands and wrists, and the increased pain was a significant change in her medical condition sufficient to reinstate benefits. This request was denied by the Bureau on April 19, 1995. Lang then petitioned for a rehearing.

[¶ 4] At the January 1996 re-application hearing, Lang testified the pain and swelling in both of her hands and wrists had continued to increase, and she had continued to seek medical treatment. Lang received thumb splints, injections to dull the pain, and surgery to replace her left thumb joint. The Bureau denied further benefits on May 2, 1996, concluding Lang had not suffered a significant change in her medical condition. The basis of the Bureau's decision was Dr. Juhala's opinion that Lang's condition was caused by degenerative osteoarthritis.

[¶ 5] Lang appealed to the District Court and on July 19, 1996, the court affirmed the Bureau's May 2, 1996, order.

[¶ 6] Lang appeals to this court from the July 19, 1996, district court judgment, alleging the Bureau ignored numerous medical opinions favorable to her position and, therefore, erred in its determination that she did

not suffer a significant change in her medical condition related to her work injury which would allow her to receive additional disability benefits.

[¶ 7] When an appeal is taken from a district court's review of an administrative agency decision, this Court reviews the decision of the agency, not that of the district court. *Walton v. N.D. Dept. of Human Services*, 552 N.W.2d 336, 338 (N.D.1996). Under N.D.C.C. § 28–32–19, we will affirm an agency's decision if the findings of fact are supported by a preponderance of the evidence, the conclusions of law are supported by the findings of fact, and the decision is in accordance with the law. *Id.* In determining whether an agency's findings of fact are supported by a preponderance of the evidence, we do not substitute our judgment for that of the agency, but rather determine whether a reasoning mind could reasonably find the factual conclusions were supported by a preponderance of the evidence. *Ohlson v. Dept. of Human Services*, 552 N.W.2d 73, 75 (N.D.1996). "To participate in the workers compensation fund, a claimant must prove a compensable injury by a preponderance of the evidence." *Symington v. N.D. Workers Comp. Bureau*, 545 N.W.2d 806, 808 (N.D.1996); N.D.C.C. § 65–01–11. In reconciling the claimant's burden of proof with our standard of review, we require the Bureau to clarify the inconsistencies and adequately explain its reasons for disregarding medical evidence favorable to the worker. *Symington*, 545 N.W.2d at 808.

[¶ 8] Lang contends the Bureau chose the opinion of Dr. Juhala that Lang's condition was caused by degenerative osteoarthritis, but ignored Dr. Juhala's opinion that work related injuries, repetitive use of her hands, aggravated her osteoarthritis.

[¶ 9] Section 65–05–08(2), N.D.C.C. states in pertinent part as follows:

When partial or total disability benefits are discontinued, the claimant shall provide the Bureau written notice of reapplication for disability benefits.... Disability benefits must be reinstated upon a finding that:

a. The employee has sustained a significant change in medical condition shown by a preponderance of the evidence;

b. The employee has provided evidence of actual wage loss attributable to the work injury; and

c. The employee has not retired or voluntarily withdrawn from the job market as defined in section 65–05–09.3.

[¶ 10] The issue at the January 1996 hearing was limited to whether Lang had experienced a significant change in her medical condition to support reinstatement of disability benefits. The questions of whether Lang had suffered an actual wage loss attributable to her injury and whether she had voluntarily withdrawn from the work force were not addressed by the administrative law judge.

[¶ 11] The recommended findings of fact, conclusions of law, and order issued by the administrative law judge were adopted as final by the Bureau on May 2, 1996. The findings of fact included the following:

## VII

That claimant's medical records show that she has had persistent pain in her hands since approximately July, 1986, according to her treating doctor, Dr. Frank Damasio, D.O., according to his report dated July 3, 1995.

## VIII

That claimant's other treating physician, Dr. Curtis A. Juhala, M.D., diagnosed her as having degenerative osteoarthritis of the left carpal-metacarpal joint thumb (sic) on March 28, 1995.

## IX

That there is no medical evidence to suggest any worsening or change in claimant's medical condition in her left hand in January of 1995 or thereafter.

## X

That claimant's medical records do not support her claim that her condition has worsened since January, 1995.

## XI

That the medical records do not suggest that there has been a significant change in claimant's medical condition which is attributable to her December 11, 1991 work injury.

## XII

That the evidence establishes that claimant's medical condition is a long-standing medical problem due to degenerative osteoarthritis.

[¶ 12] Section 65–01–02(9)(a)(1), N.D.C.C. defines "compensable injury" as including any disease which can be fairly traceable to the employment. Section 65–01–02(9)(b)(6) excludes from the term "compensable injury," "[i]njuries attributable to a preexisting injury, disease, or condition which clearly manifested itself prior to the compensable injury." This section, however, goes on to state, "This does not prevent compensation where employment substantially aggravates and acts upon an underlying condition, substantially worsening its severity, or where employment substantially accelerates the progression of an underlying condition." N.D.C.C. § 65–01–02(9)(b)(6).

[¶ 13] Lang was the only witness to testify at the January 9, 1996, hearing. Lang testified she had worked as a waitress at Gordon's Holiday Spot restaurant in Minot since 1984, and as part of her job duties carried heavy plates, ice buckets, and the like. In 1989 and 1992, Lang filed claims for bilateral de Quervain's syndrome with the Bureau, which the Bureau accepted. Lang received cortisone shots and continued to work, but when those shots no longer relieved her pain, she saw Dr. Juhala. He performed surgery in 1992 on both wrists to relieve the de Quervain's syndrome. The record indicates Lang continued to have problems with her hands, wrists, and arms in 1993 and 1994, and she saw Dr. Earnshaw and Dr. Lampman. Lang's complaints between 1988 and 1992 include pain and tenderness in both forearms, pain and swelling over the second MCP joint of the right hand, pain in both hands and wrists, and pain at the basal joint of her left thumb. Between 1993 and 1995,

she claims she continued to suffer pain in the same areas with the pain in her thumbs, hands, and wrists worsening since January 15, 1995. In February 1995, Lang saw Dr. Melissa Ray, who took x-rays of both hands and wrists and referred Lang back to Dr. Juhala for a surgical consultation. Dr. Juhala determined Lang suffered from degenerative osteoarthritis and needed both thumb joints replaced. He performed surgery on her left thumb in March of 1995.

[¶ 14] The record shows since 1988 at least four physicians diagnosed Lang as suffering from bilateral de Quervain's syndrome. The record also contains the notes of Dr. Kon Lee, a neurologist, diagnosing some localized degenerative arthritis of her right second metacarpal joint as early as 1990. In 1991 Dr. Earnshaw, an orthopaedic surgeon, noted swelling and pain in Lang's second MP joint of her right hand which he felt was "localized degenerative arthritis in the joint rather than an inflammatory poly arthritis." In Dr. Juhala's notes of September 1992, he states: "She persists with pain at the basal joint of her thumb on the left hand and also has pain at the index finger, MP joint. The patient has x-rays taken today and she shows rather severe arthritis developing at the MP joint of her right index finger.... Amazingly, the thumb basal joints look pretty good." On September 2, 1993, Dr. Lampman made an assessment of hand joint osteoarthritis and on September 24, 1994, noted "a feature that indicates some underlying osteoarthritic changes especially at the right second MP and perhaps at the thumb base areas." Dr. Juhala's office notes of February 22, 1995, indicate early degenerative osteoarthritis, specifically of her left thumb. Dr. Juhala performed surgery on Lang's left thumb on March 28, 1995. Both his preoperative and postoperative diagnoses were "[d]egenerative osteoarthritis of the left carpal metacarpal joint thumb" (sic). In September of 1995, Dr. Juhala stated in a letter to the Bureau, "I made a statement in the record that she [Lang] probably has some natural aging of her bone at the carpal metacarpal joint and I think that she indeed does, but I also feel that she indeed has some natural aggravation from her job as a waitress in the basal joint

of her thumb.... I think she has been aggravated by her job without any doubt."

[¶ 15] This court concluded in *Syverson v. N.D. Workmen's Comp. Bureau*, 406 N.W.2d 688, 690 (N.D.1987), "[i]t is sufficient if the work-related stress is a 'substantial contributing factor' to the injury." This court applied that rationale to whether Syverson proved by a preponderance of the evidence the heavy lifting he did as part of his job as an appliance and furniture mover was causally related to the development and worsening of an osteoarthritic condition in his shoulder. We concluded that testimony from Syverson's treating physician demonstrated he considered Syverson's employment a sub-. stantial contributing factor in the development of his arthritis even though the physician could not medically pinpoint the precise origin of the arthritic condition. *Id.* at 691–92.

[¶ 16] The Bureau's order in Lang's case ignores the medical evidence presented by Dr. Juhala which clearly states his opinion that Lang's osteoarthritis has been aggravated by her work "without any doubt." The Bureau chose only to rely on Dr. Juhala's opinion that Lang had degenerative osteoarthritis of her left carpal metacarpal thumb joint and concluded because her medical condition was not related to the de Quervain's syndrome she had not met her burden of proof under N.D.C.C. § 65–05–08(2).

[¶ 17] The Bureau never addressed whether an aggravation of her osteoarthritis by her work caused a significant change in her medical condition. Although claimant indicated to the administrative law judge this is not an aggravation case, the evidence in the record indicates otherwise. The Bureau argues Lang "ignore[d] the threshold requirements of Section 65–05–08(2) which demand a showing, before the medical issues are even reached, that the claimant has suffered a loss in wages as a result of the change in condition...." The parties agreed at the outset of the January 19, 1996, re-application hearing that the only issue contested was whether Lang had suffered a significant change in her medical condition. If the Bureau, however, determines a preponderance of the evidence establishes a work related aggravation of the osteoarthritis caused Lang to suffer a significant change in her medical condition, then the Bureau should make further findings as to (b) and (c) of N.D.C.C. § 65–05–08(2).

[¶ 18] This court has stated, "[w]e believe our case law clearly indicates that in cases ... where expert medical testimony is desirable if not essential to a determination of causation, the Bureau may not simply ignore competent medical testimony without expressly setting forth in its findings of fact adequate reasons, which are supported by the record, for doing so." *Satrom v. N.D. Workmen's Compensation Bureau*, 328 N.W.2d 824, 832 (N.D.1982). *See also Naumann v. North Dakota Workers Comp. Bureau*, 545 N.W.2d 184, 187 (N.D.1996); *Moses v. N.D. Workers Comp. Bureau*, 429 N.W.2d 436, 439 (N.D.1988).

[¶ 19] We conclude, in light of the medical evidence in the record, this case must be remanded to the Bureau to make appropriate findings on the issues raised by Dr. Juhala's opinions.

[¶ 20] We affirm the Bureau's decision insofar as it concludes there has not been a significant change in Lang's medical condition as it relates solely to her de Quervain's syndrome. We reverse the judgment and remand to the Bureau for further findings consistent with this opinion.

[¶ 21] VANDE WALLE, C.J., and MESCHKE and NEUMANN, JJ., concur.

SANDSTROM, Justice, dissenting.

[¶ 22] In 1989 and 1992, Patricia Lang applied for workers compensation benefits for work injuries. The injuries to left and right wrists were diagnosed by Dr. Curtis Juhala and others as tenosynovitis [1] or De Quervain's Disease (synonymous terms).[2] Workers compensation benefits were paid for

---

1. Tenosynovitis: "inflammation of a tendon sheath, as from trauma, repeated strain, or systemic disease." Random House Dictionary of the English Language 1956 (2d ed.1987).

2. *See* Rene Cailliet, M.D., Hand Pain and Impairment 173 (4th ed.1994).

these work injuries (tenosynovitis), including corrective surgery (known as tenosynovectomy) performed by Dr. Juhala. No award was made for osteoarthritis.[3]

[¶ 23] On March 13, 1995, Lang applied for additional benefits, claiming she sustained a significant change in her medical condition relating to the *previous* work injury. Lang was clearly advised this was not the process to make claims relating to a different work injury.[4]

[¶ 24] The evidence in the record clearly reflects Lang's current problems are not a result of her previous work injuries—tenosynovitis—but are due to "early degenerative osteoarthritis." As Dr. Juhala wrote the Bureau on February 22, 1995:

> "Patricia had previous pain, tendonitis [sic] in her hands and underwent surgery in April of 1992 for the right 1st dorsal compartment release and in September of 1992 for the left 1st dorsal compartment release.
>
> \* \* \* \* \* \*
>
> "Her real symptomatology now comes from … early degenerative osteoarthritis of the carpometacarpal joint.
>
> \* \* \* \* \* \*
>
> "I feel very strongly that this is an aging process that has occurred on Patricia's hand."

[¶ 25] Tenosynovitis (inflammation of the tendon sheath) and osteoarthritis (inflammation of the joints) are separate, distinct diseases or injuries. There is no medical evidence to the contrary.

[¶ 26] Osteoarthritis is not a worsening of tenosynovitis. The manifestations of osteoarthritis, therefore, are not a worsening of previous work injury—tenosynovitis. The Bureau correctly found there was not a worsening of her tenosynovitis, and therefore

Lang had not "sustained a significant change in her medical condition relating to her previous work injury." That was the issue before the Bureau. The Bureau correctly decided it. I would affirm.

[¶ 27] Dale V. Sandstrom

---

3. Osteoarthritis: "the most common form of arthritis, usually occurring after middle age, marked by chronic breakdown of cartilage in the joints leading to pain, stiffness, and swelling." Random House Dictionary of the English Language 1370 (2d ed.1987).

    Arthritis: "acute or chronic inflammation of a joint, often accompanied by pain and structural changes and having diverse causes." Random House Dictionary of the Englrish Language 118 (2d ed.1987).

4. The form completed by Lang—Worker's Notice of Reapplication—clearly advised her this was not the process to apply for benefits as a result of a different injury: "Do not use this form if current condition was caused by or aggravated by a new traumatic injury or accident."