1999 ND 192

Fred BOGER, Claimant and Appellant,

v.

The NORTH DAKOTA WORKERS COMPENSATION BUREAU, Appellee.

and

Main Electric Construction, Inc., Respondent.

No. 990140.

Supreme Court of North Dakota.

Oct. 20, 1999.

Stephen D. Little, Dietz, Little & Haas, Bismarck, N.D., for claimant and appellant.

Lawrence E. King, Special Assistant Attorney General, Bismarck, N.D., for appellee.

MARING, Justice.

[¶ 1] Fred Boger appeals from a district court judgment affirming an order by the Workers Compensation Bureau denying him disability benefits. We affirm.

### I.

[¶ 2] Fred Boger worked as a lineman at Main Electric Construction in Minot for 40 years. In 1988, at age 62, he injured his back and right shoulder while on the job. Boger worked without modification to his work schedule or duties until his retirement in 1992. Boger returned to work at Main Electric in 1993 and that summer suffered additional work-related injuries, one to his right knee and one to his left shoulder. The Bureau paid Boger's medical expenses for all of these injuries, but denied disability benefits.

[¶ 3] Dr. Melissa Ray treated Boger after his 1993 shoulder injury. Dr. Ray, an occupational specialist, concluded Boger could work in a modified position at Main Electric. She issued work restrictions which allowed Boger to do light labor for up to eight hours a day, provided he did not lift or pull too great a weight, pull himself up into machines, operate a digger, or do pole work. Boger returned to a modified position at Main Electric, but again injured himself at work on October 14, 1994, while crawling under a vehicle to change the oil. He left work after telling his employer that he hurt his back and shoulder. He reported to work on two more days, but stated he was unable to work because of the pain.

[¶ 4] On October 24, 1994, Boger saw Dr. Ray, complaining of back and shoulder pain. Upon examination, Dr. Ray determined Boger could comply with the work restrictions established for him as a result of his earlier injuries. In a letter to the Bureau, Dr. Ray later concluded Boger's "symptomology never completely healed" from his 1988 injury and "all of his problems stem from the initial 1988 injury."

[¶ 5] In January, February and March of 1995, Boger sought further treatment for his back, shoulder and neck pain from Dr. Peter Earnshaw, an orthopaedic surgeon in Minot. Responding to a Bureau inquiry about Boger's condition and ability to work, Dr. Earnshaw stated:

> I would still feel that he should be able to carry out at least restricted duties as defined by Dr. Ray and feel that he cannot do any serious harm by trying this. Again, the complaints are somewhat subjective in nature, but if the patient complaints of pain are too unbearable when he tries to work, then

some further modifications may be necessary.

[¶ 6] On July 7, 1995, Dr. Ray re-evaluated Boger and informed the Bureau of her belief that he could perform within the existing work restrictions. Dr. Ray also ordered a new Functional Capacity Evaluation ("FCE") to confirm these statements. On August 14, 1995, physical therapist Karen Rasmusson performed a new FCE, and concluded that Boger, "was able to perform the activities as outlined in the modified duty form completed by Dr. Melissa Ray." On October 6, 1995, the Bureau denied Boger's claim for disability benefits based on his 1988 injury, relying on Dr. Ray's opinion that Boger could continue working within the established work restrictions.

[¶ 7] Boger decided to seek treatment outside the Minot area and, on April 15, 1996, Dr. Carol Krause examined him in Bismarck. Dr. Krause also issued modified work restrictions for Boger, clearing him to work up to four hours per day with limited lifting, squatting, bending, stooping, standing and walking. On May 1, 1996, Boger reapplied for disability benefits based on Dr. Krause's opinion.

[¶ 8] The Bureau did not consider Dr. Krause to be Boger's treating physician, therefore on June 3, 1996, Boger filed a request to change doctors with the Bureau, citing his desire to see Dr. Carol Krause. The Bureau denied the request because Boger had access to competent medical care in his community. However, a Bureau Claims Analyst later informed Boger by letter that if he obtained a referral from Dr. Ray, he could continue to see Dr. Krause. Dr. Ray wrote to the Bureau, expressing that Boger's request should be granted if he experienced successful treatment with Dr. Krause. Despite Dr. Ray's referral, the Bureau denied Boger's request. Boger subsequently chose a different Minot physician from a list approved by the Bureau. The Bureau denied Boger's reapplication for disability benefits on July 5, 1996, declaring Boger failed to prove his entitlement to benefits and Dr. Krause, because she was not Boger's attending physician, could not certify disability.

[¶ 9] On September 25, 1996, the Bureau held another hearing to determine Boger's eligibility for disability benefits. The Administrative Law Judge ("ALJ") recognized medical opinions of Boger's capabilities differed. The ALJ stated, "[t]he fact that Dr. Krause is not Mr. Boger's attending doctor for Worker compensation purposes does not equate with ignoring her opinion." He then concluded:

> Peter Earnshaw M.D., Melissa Ray D.O., and Karen Rasmusson M.P.T., are all of the opinion that Fred Boger was capable of performing the modified job set up for him at Main Electric. I find their opinions to be more persuasive than the opinion of Carol Krause, M.D. in this case. Dr. Krause's opinion is primarily distinguishable from the opinions of Earnshaw, Ray and Rasmusson in terms of work up to four hours per day instead of up to eight hours per day for Fred Boger. This is not that much of a variance of opinions and can be reconciled by semi-retirement, retirement, the passage of time, the aging process and perhaps an inordinate amount of reliance upon Mr. Boger as a historian for his medical condition. What is actually most significant about Dr. Krause's opinion is that even she does not support Fred Boger's claim that he is totally disabled from working because of pain and comfort [sic] secondary to work injuries.

[¶ 10] The ALJ determined Boger failed to establish a total disability resulting from his 1988 work injury or a significant change in medical condition attributable to the injury, and thus was not entitled to disability or rehabilitation benefits. The ALJ also concluded Boger had not suffered a loss of earning capacity or actual wage loss attributable to the injury. The Bureau adopted the ALJ's order and the district court affirmed.

## II.

[¶ 11] Under N.D.C.C. § 65–01–11, a workers compensation claimant must establish his or her right to receive benefits from the fund by a preponderance of the evidence. *Spangler v. N.D. Workers Compensation Bureau*, 519 N.W.2d 576, 577 (N.D.1994). It is within the province of the Bureau to weigh the credibility of medical evidence. *Symington v. N.D. Workers Compensation Bureau*, 545 N.W.2d 806, 809 (N.D.1996). Though the Bureau may resolve conflicts between medical opinions, the authority to reject medical evidence selectively does not permit the Bureau to "pick and choose in an unreasoned manner." *Spangler*, 519 N.W.2d at 577 (citing *Weber v. N.D. Workmen's Compensation Bureau*, 377 N.W.2d 571, 574 (N.D.1985)). The Bureau "must consider the entire record, clarify inconsistencies, and adequately explain its reason for disregarding medical evidence favorable to the worker." *Id.*

[¶ 12] In an appeal from a district court judgment entered on review of an administrative agency decision, we review the decision of the agency, rather than that of the district court. *Lang v. N.D. Workers Compensation Bureau*, 1997 ND 133, ¶ 7, 566 N.W.2d 801. We affirm an administrative agency decision unless the agency's findings of fact are not supported by a preponderance of the evidence, the conclusions of law are not supported by the findings of fact, the decision is not supported by the conclusions of law, the decision is not in accordance with the law or violates the appellant's constitutional rights, or the agency's rules or procedures deprived the appellant of a fair hearing. *Sprunk v. N.D. Workers Compensation Bureau*, 1998 ND 93, ¶ 4, 576 N.W.2d 861. In evaluating an administrative agency's findings of fact, we do not make independent findings or substitute our judgment for that of the agency, but determine only if a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence from the entire record. *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214, 220 (N.D.1979); *Hibl v. N.D. Workers Compensation Bureau*, 1998 ND 198, ¶ 7, 586 N.W.2d 167.

## III.

[¶ 13] Boger claims that the ALJ disregarded Dr. Krause's medical opinion and failed to explain adequately his reason for doing so. We disagree.

[¶ 14] The ALJ explained he considered Dr. Krause's opinion along with the other medical opinions, even though Dr. Krause was not Boger's treating physician for his workers compensation claim. He then noted that the most substantial difference of opinion lay in the number of hours per day that Boger could work. This difference of opinion could be reconciled, he stated, "by semi-retirement, retirement, the passage of time, the aging process and perhaps an inordinate amount of reliance upon Mr. Boger as a historian for his medical condition."

[¶ 15] Though not a model of clarity, this statement suggests that the ALJ did not necessarily disbelieve, in its entirety, Dr. Krause's conflicting opinion as to Boger's deteriorating capabilities. Rather, even though Boger's condition worsened, the change could be attributed to the normal aging process, rather than to his work-related injury. Dr. Ray's communication with the Bureau supports this conclusion. In a letter to the Bureau dated July 7, 1995, Dr. Ray noted that, "I do not believe that Mr. Boger has sustained a significant change in his condition since the 1988 injury because his symptoms were somewhat equivalent to the 1993 injury." She also stated, " . . . I anticipate his condition has deteriorated primarily due to the aging process."

[¶ 16] Further, the Bureau was entitled to rely on Dr. Ray's opinion because Dr. Ray was the physician most familiar with Boger's medical history and ongoing health. This Court has refused to establish a presumption entitling a treating phy-

sician's opinion to "great weight," *Symington*, 545 N.W.2d at 809–10; however, we recognize that a long term physician-patient relationship may afford the treating doctor a more comprehensive view of the claimant's medical history and condition. In this case, Dr. Ray treated Boger both before and immediately after the 1994 re-injury to his back and shoulder. She also fully re-evaluated Boger approximately one year after the injury. Under these circumstances, and given the Bureau's right to weigh medical evidence, we cannot conclude that the Bureau improperly relied on Dr. Ray's opinion, which was supported by the opinions of Dr. Earnshaw and Karen Rasmusson.

[¶ 17] Boger bore the burden of producing evidence showing that he suffers from a work-related, disabling condition, rendering him unable to hold employment. However, Boger's claim relied completely on the medical opinion of Dr. Krause and, as the ALJ noted, even Dr. Krause's work restrictions did not preclude Boger from working altogether. We conclude that, on the facts of this case, a reasoning mind reasonably could determine Boger failed to prove his entitlement to disability benefits by a preponderance of the evidence. We, therefore, affirm the Bureau's decision to deny disability benefits.

[¶ 18] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, DALE V. SANDSTROM, CAROL RONNING KAPSNER, JJ., concur.